**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

IN RE:

|  |  |  |
|---|---|---|
| Brian D. Umholtz | : | |
| Jacqueline L. Miller, | : | Chapter 13 |
| Debtors. | : | |
| | : | |
| Univest Bank and Trust Co. | : | |
| Movant | : | |
| v. | : | Bankruptcy No. 1:25-03327 HWV |
| | : | |
| Brian D. Umholtz, | : | |
| Jacqueline L. Miller | : | |
| Respondents. | : | |
| | : | |

**OBJECTION TO CONFIRMATION OF DEBTORS' CHAPTER 13 PLAN**

Univest Bank and Trust Co. ("Univest" and/or "Creditor") objects to the Chapter 13 Plan

Proposed by the Debtors, Brian D. Umholtz and Jacqueline L. Miller (collectively the "Debtors")

[Dkt. No. 17] and, in support thereof, North Mill respectfully states as follows:

1.      This Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334.

2.      This is a core proceeding under 28 U.S.C. § 157(b)(2)(L).

3.      On or about November 20, 2025, Debtors filed this current bankruptcy petition

under Chapter 13 of the United States Bankruptcy Code.

4.      On or about December 4, 2025, the Debtors filed their proposed Chapter 13 Plan

(the "Plan"). See Dkt No. 17.

5.      Univest filed its Proof of Claim on December 11, 2025 as Claim number 1-1

("Claim No. 1"), reflecting a total debt of $882,754.20 and pre-petition arrears of $92,209.16. See

Claim 1 attached hereto and incorporated herein as Exhibit "I."

6.     On or about December 21, 2023, UmMiller 1295 LLC and UMK SLI, LLC (collectively, the "Borrowers") and Creditor entered into a U.S. Small Business Administration Promissory Note (collectively the "Note") for a loan from Plaintiff to Borrower in the principal amount of $830,000.00 (the "Loan").  See Exhibit "A" attached to Exhibit "I".

7.     To induce Plaintiff to make the Loan to Borrowers, on or about December 21, 2023, Debtors each executed and delivered an Unconditional Guarantee (collectively the "Guarantees") to Plaintiff, in which Debtors guaranteed all of the obligations of the Borrower to Lender under the Note.  See Exhibit "B" attached to Exhibit "I".

8.     To further secure the Note, Debtors also executed and delivered to Plaintiff a certain Mortgage (the "Sharpshin Lane Mortgage") dated December 21, 2023 in favor of Lender upon real property located at 20 Sharpshin Lane, York, PA bearing Parcel No. 35-000-JK-0151.B0-00000 (the "Sharpshin Lane Property"); which was recorded in  Office of the Recorder of Deeds of YORK County, PA on December 28, 2023 in MTG BK 2810 Page 5379 as Instrument Number 2023050244.  See Exhibit "C" attached to Exhibit "I".

9.     To further secure the Note, Debtors also executed and delivered to Plaintiff a certain Mortgage ("Thomas Armor Drive Mortgage", and together with the Sharpshin Lane Mortgage and the Lewisberry Road Mortgage, collectively, "the Mortgages") dated December 21, 2023 in favor of Lender upon real property located at 725 Thomas Armor Drive, Windsor, PA bearing Parcel No. 53-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.00-00000 (the "Thomas Armor Property" and collectively with the Sharpshin Lane Property, the "Properties"); which was recorded in the Office of the Recorder of Deeds of YORK County, PA on December 28, 2023 in MTG BK 2810 Page 5356 as Instrument Number 2023050243.  See Exhibit "D" attached to Exhibit "I".

10. Creditor holds valid, perfected mortgage liens against each of the Properties, securing repayment of Debtors' obligations to Creditor. The liens were properly recorded and remain in full force and effect.

11. The Debtors' Amended Schedules [Dkt. No. 18], lists the Sharpshin Lane Property as having a value of $200,000.00, but Brian Umholtz testified at the 341 meeting that this value was based on his best guess. See Dkt. No 18, Schedule A/B.

12. Univest believes that the Sharpshin Lane Property is worth approximately $293,000.00[1].

13. The Debtors Amended Schedules [Dkt. No. 18], lists one creditor with a lien against the Sharpshin Lane Property in the amount of $73,724.00. See Dkt. No 18, Schedule D.

14. That leaves approximately $219,276.00[2] of equity available, which secures the Sharpshin Lane Mortgage.

15. The Debtors' Amended Schedules [Dkt. No. 18], lists the Thomas Armor Property as having a value of $220,000.00, but Brian Umholtz testified at the 341 meeting that this value was based on his best guess. See Dkt. No 18, Schedule A/B.

16. Univest believes that the Thomas Armor Property is worth approximately $290,000.00[3].

17. The Debtors Amended Schedules [Dkt. No. 18], lists one creditor with a lien against the Thomas Armor Property in the amount of $104,570.00. See Dkt. No 18, Schedule D.

---

[1] This value is based on an appraisal that Univest has obtained for the Sharpshin Lane Property as of December 18, 2025.

[2] This value has been calculated using the appraised value from the appraisal obtained by Univest.

[3] This value is based on an appraisal that Univest has obtained for the Thomas Armor Property as of December 17, 2025.

18.     That leaves approximately $185,430.00[4] of equity available, which secures the Thomas Armor Mortgage.

19.     Debtors' schedules and/or other information available to Creditor reflect that both Properties have equity in excess of senior liens, if any. Accordingly, Creditor is a secured creditor pursuant to 11 U.S.C. § 506(a).

20.     Notwithstanding Creditor's secured status, Debtors have improperly listed Creditor as an unsecured creditor in their schedules and Plan. The Plan fails to acknowledge, provide for, or otherwise account for Creditor's secured claims or lien rights against the Properties.

21.     The Plan does not satisfy the requirements of 11 U.S.C. § 1325(a)(5), as it does not: (i) provide for retention of Creditor's liens; (ii) provide for payment of the present value of Creditor's secured claims; or (iii) reflect Creditor's consent to alternative treatment.

22.     A Chapter 13 plan that misclassifies secured claims as unsecured and fails to recognize valid liens is not confirmable. See 11 U.S.C. §§ 1322(b)(2), 1325(a)(1), and 1325(a)(5).

23.     Creditor reserves all rights to object further to confirmation of the Plan, to amend or supplement this Objection, and to assert additional grounds as discovery or further review may warrant.

---

[4] This value has been calculated using the appraised value from the appraisal obtained by Univest.

Wherefore, based on the reasons set forth herein, Univest Bank and Trust Co. respectfully requests this Honorable Court deny confirmation of the Debtor's proposed Chapter 13 Bankruptcy Plan, and for such as relief as this Court deems just and proper.

<div style="margin-left:50%">

Respectfully submitted
**STARFIELD & SMITH, P.C.**

/s/Lyndsay E. Rowland_____
Lyndsay Rowland, Esquire
401 Plymouth Road, Suite 120
Plymouth Meeting, PA 19462
Phone (215) 542-7070
Fax (215) 542-0723
Email: lrowland@starfieldsmith.com

</div>

Date: January 23, 2026

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

IN RE:

| | | |
|---|---|---|
| Brian D. Umholtz and | : | |
| Jacqueline L. Miller, | : | Chapter 13 |
| Debtors. | : | |
| | : | Bankruptcy No. 1:25-03327 HWV |
| Univest Bank and Trust Co. | : | |
| Movant, | : | |
| | : | |
| v. | : | |
| Brian D. Umholtz and | : | |
| Jacqueline L. Miller, | : | |
| Respondents. | : | |
| | : | |

## CERTIFICATION OF SERVICE

I, Lyndsay E. Rowland, Esquire, hereby certify that service upon all interested parties indicated below, was made by sending true and correct copies of the Objection of Univest Bank and Trust Co. to Confirmation of Debtor's Chapter 13 Plan and proposed form of order in the manner indicated below:

Date Served:  January 23, 2026

John Matthew Hyams
Law Offices of John M. Hyams
1007 N. Front Street, Suite 3 South
Harrisburg, PA  17102
**Attorney for Debtor**
**CM/ECF**

United States Trustee
1501 N. 6th Street
Harrisburg, PA  17102
United States Trustee
**CM/ECF**

Jack N. Zaharopoulos
8125 Adams Drive, Suite A
Hummelstown, PA  17036
**Chapter 13 Trustee**
**CM/ECF**

By:  /s/ Lyndsay E. Rowland
Lyndsay E. Rowland, Esquire
Starfield & Smith, P.C.
401 Plymouth Road, Suite 120
Plymouth Meeting, PA  19462
(215) 542-7070/(215) 542-0723 Facsimile
lrowland@starfieldsmith.com

**EXHIBIT "I"**

{04757883;v1 }

**Fill in this information to identify the case:**

| | |
|---|---|
| Debtor 1 | Brian Umholtz |
| Debtor 2 (Spouse, if filing) | Jacqueline Miller |
| United States Bankruptcy Court for the: | Middle District of Pennsylvania |
| Case number | 25-03327 |

## Official Form 410

# Proof of Claim

04/25

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309)** that you received.

| Part 1: | Identify the Claim |
|---|---|

**1. Who is the current creditor?**

Univest Bank and Trust Co.
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

✓ No
Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| **Where should notices to the creditor be sent?** | **Where should payments to the creditor be sent?** (if different) |
|---|---|
| Univest Bank and Trust Co. <br> Name | Name |
| 14 North Main Street, PO Box 197 <br> Number          Street | Number          Street |
| Souderton          PA          18964 <br> City                State          ZIP Code | City                State          ZIP Code |
| Contact phone 215-721-2551 | Contact phone _____ |
| Contact email thomask@univest.net | Contact email _____ |

Uniform claim identifier (if you use one):

__ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __

**4. Does this claim amend one already filed?**

✓ No
Yes. Claim number on court claims registry (if known) _____     Filed on _____
MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

✓ No
Yes. Who made the earlier filing? _____

Official Form 410                    Proof of Claim                    page 1
Case 1:25-bk-03327-HWV    Claim 29    Filed 02/23/26    Desc Main 01/26/26 14:58:27    Page 1 of
Main Document    75    Page 8 of 82

**6. Do you have any number you use to identify the debtor?**

No

Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: 9 __ 1 __ 0 __ 9

**7. How much is the claim?** $_____882,754.20 **Does this amount include interest or other charges?**

__ No

✓ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Money Loaned

**9. Is all or part of the claim secured?**

__ No

✓ Yes. The claim is secured by a lien on property.

**Nature of property:**

✓ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

__ Motor vehicle

__ Other. Describe: _____

**Basis for perfection:** 2nd Mortgage Lien and 3rd Mortgage Lien (2 different props)

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:** $_____

**Amount of the claim that is secured:** $____882,754.20

**Amount of the claim that is unsecured:** $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $____92,209.16

**Annual Interest Rate** (when case was filed) 10.25 %

__ Fixed

✓ Variable

**10. Is this claim based on a lease?**

✓ No

__ Yes. **Amount necessary to cure any default as of the date of the petition.** $_____

**11. Is this claim subject to a right of setoff?**

✓ No

__ Yes. Identify the property: _____

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

✓ No

Yes. *Check one:*

| | Amount entitled to priority |
|---|---|
| Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| Up to $3,800* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| Wages, salaries, or commissions (up to $17,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | $_____ |

\* Amounts are subject to adjustment on 4/01/28 and every 3 years after that for cases begun on or after the date of adjustment.

---

**Part 3:  Sign Below**

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(3) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

✓ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  12 / 11 / 2025
                   MM / DD / YYYY

Signature *Keith C. Thomas*

Print the name of the person who is completing and signing this claim:

| | |
|---|---|
| Name | Keith C. Thomas |
| | First name      Middle name      Last name |
| Title | Senior Vice President |
| Company | Univest Bank and Trust |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. |
| Address | 14 North Main Street, PO Box 197 |
| | Number      Street |
| | Souderton                    PA        18964 |
| | City                         State     ZIP Code |
| Contact phone | 215-721-2551 |
| Email | thomask@univest.net |

Print | Save As... | Add Attachment | Reset

# SUMMARY FOR PROOF OF CLAIM OF
## UNIVEST BANK AND TRUST CO.
### XXXX91-09

On or about December 21, 2023, Univest Bank and Trust Co. ("Lender") pursuant to Note of the same date extended a loan to UmMiller 1295, LLC and UMK SLI, LLC (collectively the "Borrowers") in the original principal amount of $830,000.00. Among other things, the Loan to the Borrowers was guaranteed by and through the execution of an Unconditional Guarantee ("Guarantee I") by Brian Umholtz and the execution of an Unconditional Limited Guarantee ("Guarantee II", and together with Guarantee I, collectively, "Guarantees") by Jacqueline Miller who are Debtors in the pending bankruptcy. To further secure the Guarantees, Debtors granted Lender a second priority lien (the "2nd Mortgage") on property located at 20 Sharpshin Lane, York, PA and a third priority lien (the "3rd Mortgage") on property located at 725 Thomas Armor Drive, Windsor, PA. A copy of the Note, Guarantees and 2nd Mortgage and 3rd Mortgage are attached hereto as Exhibits "A", "B", "C" & "D", respectively.

Per Diem: $231.61                                           Interest Rate: 10.25%

**The total arrearages due as of November 20, 2025:**

| | |
|---|---|
| Principal | $20,375.08 |
| Accrued Interest | $62,535.24 |
| Accrued Late Charges | $3,684.96 |
| Legal Fees /Costs | $5,613.88 |
| Total Arrearages to Bring Loan Current | $92,209.16 |

**The payoff of the Loan as of November 20, 2025 is as follows:**

| | |
|---|---|
| Principal | $813,466.57 |
| Accrued Interest to 11/20/2025 (Per diem $231.61) | $59,988.79 |
| Accrued Late Charges | $3,684.96 |
| Legal Fees/Costs | $5,613.88 |
| TOTAL | $882,754.20 |

*Lender reserves all of its rights to amend and/or supplement this Proof of Claim or file additional Proofs of Claim, under the applicable sections of the Bankruptcy Code.

{05357901;v2 }

# EXHIBIT "A"



# U.S. Small Business Administration

# NOTE

| SBA Loan # | |
|---|---|
| SBA Application Date | SBA Received the Complete Loan Application on October 27, 2023 |
| SBA Loan Name | UMK SLI, LLC |
| Date | December 21, 2023 |
| Loan Amount | $830,000.00 |
| Interest Rate | Wall Street Journal Prime Rate plus 2.75% |
| Borrower | UmMiller 1295, LLC, and UMK SLI, LLC |
| Operating Company | UMK SLI, LLC |
| Lender | Univest Bank and Trust Co. |

1.    PROMISE TO PAY:

In return for the Loan, Borrower promises to pay to the order of Lender the amount of Eight Hundred Thirty Thousand Dollars, interest on the unpaid principal balance, and all other amounts required by this Note.

2.    DEFINITIONS:

"Collateral" means any property taken as security for payment of this Note or any guarantee of this Note.

"Guarantor" means each person or entity that signs a guarantee of payment of this Note.

"Loan" means the loan evidenced by this Note.

"Loan Documents" means the documents related to this loan signed by Borrower, any Guarantor, or anyone who pledges collateral.

"SBA" means the Small Business Administration, an Agency of the United States of America.

{04519181;v2 }
SBA Form 147 (06/03/02) Version 4.1

3.    PAYMENT TERMS:

Maturity: This Note will mature in 15 years from date of Note.

Borrower must make all payments at the place Lender designates. The payment terms for this Note are:

The interest rate on this Note will fluctuate. The initial interest rate is 11.25% per year. This initial rate is the Prime Rate in effect on the first business day of the month in which SBA received the loan application, plus 2.75%. The initial interest rate must remain in effect until the first change period begins unless changed in accordance with SOP 50 10.

Borrower must pay a total of 6 payments of interest only on the disbursed principal balance beginning one month from the month this Note is dated and every month thereafter; payments must be made on the first calendar day in the months they are due.

Borrower must pay principal and interest payments of $9,692.37 every month, beginning seven months from the month this Note is dated; payments must be made on the first calendar day in the months they are due.

Lender will apply each installment payment first to pay interest accrued to the day Lender receives the payment, then to bring principal current, then to pay any late fees, and will apply any remaining balance to reduce principal.

The interest rate will be adjusted every calendar quarter (the "change period"), beginning **January 1, 2024** (date of first rate adjustment).

The "Prime Rate" is the prime rate in effect on the first business day of the month (as published in the Wall Street Journal newspaper) in which SBA received the application, or the first day of the month in which any interest rate change occurs. Base Rates will be rounded to two decimal places with .004 being rounded down and .005 being rounded up.

The adjusted interest rate will be 2.75% above the Prime Rate. Lender will adjust the interest rate on the first calendar day of each change period. The change in interest rate is effective on that day whether or not Lender gives Borrower notice of the change.

The interest rate identified in the Note may not be changed during the life of the Loan unless changed in accordance with SOP 50 10.

The interest rate adjustment period may only be changed in accordance with SOP 50 10.

Lender must adjust the payment amount at least annually as needed to amortize principal over the remaining term of the note.

If SBA purchases the guaranteed portion of the unpaid principal balance, the interest rate becomes fixed at the rate in effect at the time of the earliest uncured payment default. If there is no uncured payment default, the rate becomes fixed at the rate in effect at the time of purchase.

**Loan Prepayment:**

Notwithstanding any provision in this Note to the contrary:

**Borrower may Prepay this Note.** Borrower may prepay 20% or less of the unpaid principal balance at any time without notice. If Borrower prepays more than 20% and the Loan has been sold on the secondary market, Borrower must:

a.       Give Lender written notice;
b.       Pay all accrued interest; and
c.       If the prepayment is received less than 21 days from the date Lender receives the notice, pay an amount equal to 21 days' interest from the date lender receives the notice, less any interest accrued during the 21 days and paid under subparagraph b., above.

If Borrower does not prepay within 30 days from the date Lender receives the notice, Borrower must give Lender a new notice.

**Subsidy Recoupment Fee.** When in any one of the first three years following the date of first disbursement Borrower voluntarily prepays more than 25% of the outstanding principal balance of the loan, Borrower must pay to Lender on behalf of SBA a prepayment fee for that year as follows:

a.  During the first year after the date of first disbursement, 5% of the total prepayment amount;

b.  During the second year after the date first disbursement, 3% of the total prepayment amount; and,

c.  During the third year after the date first disbursement, 1% of the total prepayment amount.

All remaining principal and accrued interest is due and payable 15 years from date of Note.

**Late Charge:** If a payment on this Note is more than 15 days late, Lender may charge Borrower a late fee of up to 5.00% of the unpaid portion of the regularly scheduled payment.

4.  DEFAULT:

Borrower is in default under this Note if Borrower does not make a payment when due under this Note, or if Borrower or Operating Company:

A.  Fails to do anything required by this Note and other Loan Documents;

B.  Defaults on any other loan with Lender;

C.  Does not preserve, or account to Lender's satisfaction for, any of the Collateral or its proceeds;

D.  Does not disclose, or anyone acting on their behalf does not disclose, any material fact to Lender or SBA;

E.  Makes, or anyone acting on their behalf makes, a materially false or misleading representation to Lender or SBA;

F.  Defaults on any loan or agreement with another creditor, if Lender believes the default may materially affect Borrower's ability to pay this Note;

G.  Fails to pay any taxes when due;

H.  Becomes the subject of a proceeding under any bankruptcy or insolvency law;

I.  Has a receiver or liquidator appointed for any part of their business or property;

J.  Makes an assignment for the benefit of creditors;

K.  Has any adverse change in financial condition or business operation that Lender believes may materially affect Borrower's ability to pay this Note;

L.  Reorganizes, merges, consolidates, or otherwise changes ownership or business structure without Lender's prior written consent; or

M.  Becomes the subject of a civil or criminal action that Lender believes may materially affect Borrower's ability to pay this Note.

5.  LENDER'S RIGHTS IF THERE IS A DEFAULT:

Without notice or demand and without giving up any of its rights, Lender may:

A.  Require immediate payment of all amounts owing under this Note;

B.  Collect all amounts owing from any Borrower or Guarantor;

C.  File suit and obtain judgment;

D.  Take possession of any Collateral; or

E.  Sell, lease, or otherwise dispose of, any Collateral at public or private sale, with or without advertisement.

6.  LENDER'S GENERAL POWERS:

Without notice and without Borrower's consent, Lender may:

A. Bid on or buy the Collateral at its sale or the sale of another lienholder, at any price it chooses;

B. Incur expenses to collect amounts due under this Note, enforce the terms of this Note or any other Loan Document, and preserve or dispose of the Collateral. Among other things, the expenses may include payments for property taxes, prior liens, insurance, appraisals, environmental remediation costs, and reasonable attorney's fees and costs. If Lender incurs such expenses, it may demand immediate repayment from Borrower or add the expenses to the principal balance;

C. Release anyone obligated to pay this Note;

D. Compromise, release, renew, extend or substitute any of the Collateral; and

E. Take any action necessary to protect the Collateral or collect amounts owing on this Note.

7. WHEN FEDERAL LAW APPLIES:

When SBA is the holder, this Note will be interpreted and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Note, Borrower may not claim or assert against SBA any local or state law to deny any obligation, defeat any claim of SBA, or preempt federal law.

8. SUCCESSORS AND ASSIGNS:

Under this Note, Borrower and Operating Company include the successors of each, and Lender includes its successors and assigns.

9. GENERAL PROVISIONS:

A. All individuals and entities signing this Note are jointly and severally liable.

B. Borrower waives all suretyship defenses.

C. Borrower must sign all documents necessary at any time to comply with the Loan Documents and to enable Lender to acquire, perfect, or maintain Lender's liens on Collateral.

D. Lender may exercise any of its rights separately or together, as many times and in any order it chooses. Lender may delay or forgo enforcing any of its rights without giving up any of them.

E. Borrower may not use an oral statement of Lender or SBA to contradict or alter the written terms of this Note.

F. If any part of this Note is unenforceable, all other parts remain in effect.

G. To the extent allowed by law, Borrower waives all demands and notices in connection with this Note, including presentment, demand, protest, and notice of dishonor. Borrower also waives any defenses based upon any claim that Lender did not obtain any guarantee; did not obtain, perfect, or maintain a lien upon Collateral; impaired Collateral; or did not obtain the fair market value of Collateral at a sale.

10.   STATE-SPECIFIC PROVISIONS:

**CONFESSION OF JUDGMENT.  THE UNDERSIGNED HEREBY IRREVOCABLY AUTHORIZES AND EMPOWERS ANY ATTORNEY-AT-LAW TO APPEAR IN ANY COURT OF RECORD AND TO CONFESS JUDGMENT AGAINST THE UNDERSIGNED FOR THE UNPAID AMOUNT OF THIS NOTE AS EVIDENCED BY AN AFFIDAVIT SIGNED BY AN OFFICER OF LENDER SETTING FORTH THE AMOUNT THEN DUE, TOGETHER WITH ALL INDEBTEDNESS PROVIDED FOR THEREIN (WITH OR WITHOUT ACCELERATION OF MATURITY), PLUS ATTORNEYS' FEES OF TEN PERCENT (10%) OF THE TOTAL INDEBTEDNESS OR FIVE THOUSAND DOLLARS ($5,000.00), WHICHEVER IS THE LARGER AMOUNT FOR THE COLLECTION, WHICH BORROWER AND LENDER AGREE IS REASONABLE, PLUS COSTS OF SUIT, AND TO RELEASE ALL ERRORS, AND WAIVE ALL RIGHTS OF APPEAL.  THE UNDERSIGNED EXPRESSLY RELEASES ALL ERRORS, WAIVES ALL STAY OF EXECUTION, RIGHTS OF INQUISITION AND EXTENSION UPON ANY LEVY UPON REAL ESTATE AND ALL EXEMPTION OF PROPERTY FROM LEVY AND SALE UPON ANY EXECUTION HEREON; AND THE UNDERSIGNED EXPRESSLY AGREES TO CONDEMNATION AND EXPRESSLY RELINQUISHES ALL RIGHTS TO BENEFITS OR EXEMPTIONS UNDER ANY AND ALL EXEMPTION LAWS NOW IN FORCE OR WHICH MAY HEREAFTER BE ENACTED.  NO SINGLE EXERCISE OF THE FOREGOING WARRANT AND POWER TO CONFESS JUDGMENT WILL BE DEEMED TO EXHAUST THE POWER, WHETHER OR NOT ANY SUCH EXERCISE SHALL BE HELD BY ANY COURT TO BE INVALID, VOIDABLE OR VOID; BUT THE POWER WILL CONTINUE UNDIMINISHED AND MAY BE EXERCISED FROM TIME TO TIME AS LENDER MAY ELECT UNTIL ALL AMOUNTS OWING ON THIS NOTE HAVE BEEN PAID IN FULL.  THE UNDERSIGNED HEREBY WAIVES AND RELEASES ANY AND ALL CLAIMS OR CAUSES OF ACTION WHICH THE UNDERSIGNED MIGHT HAVE AGAINST ANY ATTORNEY ACTING UNDER THE TERMS OF AUTHORITY WHICH THE UNDERSIGNED HAS GRANTED HEREIN ARISING OUT OF OR CONNECTED WITH THE CONFESSION OF JUDGMENT HEREUNDER.**

{04519181;v2 }
SBA Form 147 (06/03/02) Version 4.1

11.    BORROWER'S NAME(S) AND SIGNATURE(S):

By signing below, each individual or entity becomes obligated under this Note as Borrower.

UmMiller 1295, LLC

By: _____
    Brian Umholtz, Member

By: _____
    Jacqueline Miller, Member

UMK SLI, LLC

By: _____
    Brian Umholtz, Member

By: _____
    Jacqueline Miller, Member

Borrower(s):   UmMiller 1295, LLC, and UMK SLI, LLC

Lender:   Univest Bank and Trust Co.

Date:   December 21, 2023

<u>DISCLOSURE FOR CONFESSION OF JUDGMENT</u>

I/We have executed a Promissory Note (the "Note") in the original amount of $830,000.00 obligating Borrower to repay that amount.

Initials: _____   Initials: _____

I/We understand that the Note contains wording that would permit Univest Bank and Trust Co. to enter judgment against Borrower in Court, without advance notice to Borrower and without offering Borrower an opportunity to defend against the entry of judgment, and that the judgment may be collected immediately by any legal means.

Initials: _____   Initials: _____

In executing the Note, Borrower is knowingly, understandingly and voluntarily waiving its rights to resist the entry of judgment against it at the courthouse, including any right to advance notice of the entry of, or execution upon, said judgment, and Borrower is consenting to the confession of judgment.

Initials: _____   Initials: _____

I/We certify that Borrower's annual income exceeds $10,000.00; that the blanks in this disclosure were filled in when I/we initialed and signed; and that I/we received a copy at the time of signing.

UmMiller 1295, LLC

By: _____
Brian Umholtz, Member

By: _____
Jacqueline Miller, Member

UMK SLI, LLC

By: _____
Brian Umholtz, Member

By: _____
Jacqueline Miller, Member

Signed, acknowledged and delivered in the presence of:

_____
Witness

{04519181;v2 }

# EXHIBIT "B"



U.S. Small Business Administration

# UNCONDITIONAL GUARANTEE

| SBA Loan # | : |
|---|---|
| SBA Loan Name | UMK SLI, LLC |
| Guarantor | Jacqueline Miller |
| Borrower | UmMiller 1295, LLC, and UMK SLI, LLC |
| Lender | Univest Bank and Trust Co. |
| Date | December 21, 2023 |
| Note Amount | $830,000.00 |

1. GUARANTEE:

    Guarantor unconditionally guarantees payment to Lender of all amounts owing under the Note. This Guarantee remains in effect until the Note is paid in full. Guarantor must pay all amounts due under the Note when Lender makes written demand upon Guarantor. Lender is not required to seek payment from any other source before demanding payment from Guarantor.

2. NOTE:

    The "Note" is the promissory note dated of even date herewith in the principal amount of Eight Hundred Thirty Thousand Dollars from Borrower to Lender. It includes any assumption, renewal, substitution, or replacement of the Note, and multiple notes under a line of credit.

3. DEFINITIONS:

    "Collateral" means any property taken as security for payment of the Note or any guarantee of the Note.
    "Loan" means the loan evidenced by the Note.
    "Loan Documents" means the documents related to the Loan signed by Borrower, Guarantor or any other guarantor, or anyone who pledges Collateral.
    "SBA" means the Small Business Administration, an Agency of the United States of America.

{04519238;v2 }
SBA Form 148 (10/98) Previous editions obsolete.

Page 1/5

Case 1:25-bk-03327-HWV  Doc 29  Filed 01/23/25  Entered 01/28/26 14:58:27  Page 1 of
Main Document 75  Page 21 of 82

4. **LENDER'S GENERAL POWERS:**

Lender may take any of the following actions at any time, without notice, without Guarantor's consent, and without making demand upon Guarantor:

A. Modify the terms of the Note or any other Loan Document except to increase the amounts due under the Note;

B. Refrain from taking any action on the Note, the Collateral, or any guarantee;

C. Release any Borrower or any guarantor of the Note;

D. Compromise or settle with the Borrower or any guarantor of the Note;

E. Substitute or release any of the Collateral, whether or not Lender receives anything in return;

F. Foreclose upon or otherwise obtain, and dispose of, any Collateral at public or private sale, with or without advertisement;

G. Bid or buy at any sale of Collateral by Lender or any other lienholder, at any price Lender chooses; and

H. Exercise any rights it has, including those in the Note and other Loan Documents.

These actions will not release or reduce the obligations of Guarantor or create any rights or claims against Lender.

5. **FEDERAL LAW:**

When SBA is the holder, the Note and this Guarantee will be construed and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Guarantee, Guarantor may not claim or assert any local or state law against SBA to deny any obligation, defeat any claim of SBA, or preempt federal law.

6. **RIGHTS, NOTICES, AND DEFENSES THAT GUARANTOR WAIVES:**

To the extent permitted by law,

A. Guarantor waives all rights to:

    1) Require presentment, protest, or demand upon Borrower;

    2) Redeem any Collateral before or after Lender disposes of it;

    3) Have any disposition of Collateral advertised; and

    4) Require a valuation of Collateral before or after Lender disposes of it.

B. Guarantor waives any notice of:

    1) Any default under the Note;

    2) Presentment, dishonor, protest, or demand;

    3) Execution of the Note;

    4) Any action or inaction on the Note or Collateral, such as disbursements, payment, nonpayment, acceleration, intent to accelerate, assignment, collection activity, and incurring enforcement expenses;

    5) Any change in the financial condition or business operations of Borrower or any guarantor;

    6) Any changes in the terms of the Note or other Loan Documents, except increases in the amounts due under the Note; and

    7) The time or place of any sale or other disposition of Collateral.

C. Guarantor waives defenses based upon any claim that:

    1) Lender failed to obtain any guarantee;

    2) Lender failed to obtain, perfect, or maintain a security interest in any property offered or taken as Collateral;

    3) Lender or others improperly valued or inspected the Collateral;

    4) The Collateral changed in value, or was neglected, lost, destroyed, or underinsured;

| | 5) | Lender impaired the Collateral; |
|---|---|---|
| | 6) | Lender did not dispose of any of the Collateral; |
| | 7) | Lender did not conduct a commercially reasonable sale; |
| | 8) | Lender did not obtain the fair market value of the Collateral; |
| | 9) | Lender did not make or perfect a claim upon the death or disability of Borrower or any guarantor of the Note; |
| | 10) | The financial condition of Borrower or any guarantor was overstated or has adversely changed; |
| | 11) | Lender made errors or omissions in Loan Documents or administration of the Loan; |
| | 12) | Lender did not seek payment from the Borrower, any other guarantors, or any Collateral before demanding payment from Guarantor; |
| | 13) | Lender impaired Guarantor's suretyship rights; |
| | 14) | Lender modified the Note terms, other than to increase amounts due under the Note. If Lender modifies the Note to increase the amounts due under the Note without Guarantor's consent, Guarantor will not be liable for the increased amounts and related interest and expenses, but remains liable for all other amounts; |
| | 15) | Borrower has avoided liability on the Note; or |
| | 16) | Lender has taken an action allowed under the Note, this Guarantee, or other Loan Documents. |

7. **DUTIES AS TO COLLATERAL:**

Guarantor will preserve the Collateral pledged by Guarantor to secure this Guarantee. Lender has no duty to preserve or dispose of any Collateral.

8. **SUCCESSORS AND ASSIGNS:**

Under this Guarantee, Guarantor includes heirs and successors, and Lender includes its successors and assigns.

9. **GENERAL PROVISIONS:**

A. ENFORCEMENT EXPENSES. Guarantor promises to pay all expenses Lender incurs to enforce this Guarantee, including, but not limited to, attorney's fees and costs.

B. SBA NOT A CO-GUARANTOR. Guarantor's liability will continue even if SBA pays Lender. SBA is not a co-guarantor with Guarantor. Guarantor has no right of contribution from SBA.

C. SUBROGATION RIGHTS. Guarantor has no subrogation rights as to the Note or the Collateral until the Note is paid in full.

D. JOINT AND SEVERAL LIABILITY. All individuals and entities signing as Guarantor are jointly and severally liable.

E. DOCUMENT SIGNING. Guarantor must sign all documents necessary at any time to comply with the Loan Documents and to enable Lender to acquire, perfect, or maintain Lender's liens on Collateral.

F. FINANCIAL STATEMENTS. Guarantor must give Lender financial statements as Lender requires.

G. LENDER'S RIGHTS CUMULATIVE, NOT WAIVED. Lender may exercise any of its rights separately or together, as many times as it chooses. Lender may delay or forgo enforcing any of its rights without losing or impairing any of them.

H. ORAL STATEMENTS NOT BINDING. Guarantor may not use an oral statement to contradict or alter the written terms of the Note or this Guarantee, or to raise a defense to this Guarantee.

I. SEVERABILITY. If any part of this Guarantee is found to be unenforceable, all other parts will remain in effect.

J. CONSIDERATION. The consideration for this Guarantee is the Loan or any accommodation by Lender as to the Loan.

{04519238;v2 }
SBA Form 148 (10/98) Previous editions obsolete.

Page 3/5

Case 1:25-bk-00327-HWV   Doc 29   Filed 02/13/25   Entered 02/13/25 14:58:27   Page 23 of
Main Document75   Page 23 of 82

10.    STATE-SPECIFIC PROVISIONS:

CONFESSION OF JUDGMENT.  THE UNDERSIGNED HEREBY IRREVOCABLY AUTHORIZES AND EMPOWERS ANY ATTORNEY-AT-LAW TO APPEAR IN ANY COURT OF RECORD AND TO CONFESS JUDGMENT AGAINST THE UNDERSIGNED FOR THE UNPAID AMOUNT OF THE NOTE AS EVIDENCED BY AN AFFIDAVIT SIGNED BY AN OFFICER OF LENDER SETTING FORTH THE AMOUNT THEN DUE, TOGETHER WITH ALL INDEBTEDNESS PROVIDED FOR THEREIN (WITH OR WITHOUT ACCELERATION OF MATURITY), PLUS ATTORNEYS' FEES OF TEN PERCENT (10%) OF THE TOTAL INDEBTEDNESS OR FIVE THOUSAND DOLLARS ($5,000.00), WHICHEVER IS THE LARGER AMOUNT FOR THE COLLECTION, WHICH GUARANTOR AND LENDER AGREE IS REASONABLE, PLUS COSTS OF SUIT, AND TO RELEASE ALL ERRORS, AND WAIVE ALL RIGHTS OF APPEAL. THE UNDERSIGNED EXPRESSLY RELEASES ALL ERRORS, WAIVES ALL STAY OF EXECUTION, RIGHTS OF INQUISITION AND EXTENSION UPON ANY LEVY UPON REAL ESTATE AND ALL EXEMPTION OF PROPERTY FROM LEVY AND SALE UPON ANY EXECUTION HEREON; AND THE UNDERSIGNED EXPRESSLY AGREES TO CONDEMNATION AND EXPRESSLY RELINQUISHES ALL RIGHTS TO BENEFITS OR EXEMPTIONS UNDER ANY AND ALL EXEMPTION LAWS NOW IN FORCE OR WHICH MAY HEREAFTER BE ENACTED.  NO SINGLE EXERCISE OF THE FOREGOING WARRANT AND POWER TO CONFESS JUDGMENT WILL BE DEEMED TO EXHAUST THE POWER, WHETHER OR NOT ANY SUCH EXERCISE SHALL BE HELD BY ANY COURT TO BE INVALID, VOIDABLE OR VOID; BUT THE POWER WILL CONTINUE UNDIMINISHED AND MAY BE EXERCISED FROM TIME TO TIME AS LENDER MAY ELECT UNTIL ALL AMOUNTS OWING ON THIS NOTE HAVE BEEN PAID IN FULL.  THE UNDERSIGNED HEREBY WAIVES AND RELEASES ANY AND ALL CLAIMS OR CAUSES OF ACTION WHICH THE UNDERSIGNED MIGHT HAVE AGAINST ANY ATTORNEY ACTING UNDER THE TERMS OF AUTHORITY WHICH THE UNDERSIGNED HAS GRANTED HEREIN ARISING OUT OF OR CONNECTED WITH THE CONFESSION OF JUDGMENT HEREUNDER.

{04519238;v2 }
SBA Form 148 (10/98)  Previous editions obsolete.

Page 4/5

11.  **GUARANTOR ACKNOWLEDGMENT OF TERMS:**

Guarantor acknowledges that Guarantor has read and understands the significance of all terms of the Note and this Guarantee, including all waivers.

12.  **GUARANTOR NAME(S) AND SIGNATURE(S):**

By signing below, each individual or entity becomes obligated as Guarantor under this Guarantee.

_____

Jacqueline Miller, Individually

{04519238;v2 }

Guarantor(s): Jacqueline Miller

Lender: Univest Bank and Trust Co.

Date: December 21, 2023

## DISCLOSURE FOR CONFESSION OF JUDGMENT

I have executed a guarantee (the "Guarantee") in the original amount of $830,000.00 obligating me to repay that amount.

Initials: _____

I understand that the Guarantee contains wording that would permit Univest Bank and Trust Co. to enter judgment against me in Court, without advance notice to me and without offering me an opportunity to defend against the entry of judgment, and that the judgment may be collected immediately by any legal means.

Initials: _____

In executing the Guarantee, I am knowingly, understandingly and voluntarily waiving my rights to resist the entry of judgment against me at the courthouse, including any right to advance notice of the entry of, or execution upon, said judgment, and I am consenting to the confession of judgment.

Initials: _____

I certify that my annual income exceeds $10,000; that the blanks in this disclosure were filled in when I initialed and signed it; and that I received a copy at the time of signing.

_____
Jacqueline Miller, Individually

Signed, acknowledged and delivered in the presence of:

_____
Witness

{04519238;v2 }

Attachment to Guaranty for Florida Transactions

## Notice To Guarantor of Garnishment Waiver

IF YOU PROVIDE MORE THAN ONE-HALF OF THE SUPPORT FOR A CHILD OR OTHER DEPENDENT, ALL OR PART OF YOUR INCOME IS EXEMPT FROM GARNISHMENT. UNDER FLORIDA LAW. YOU CAN WAIVE THIS PROTECTION ONLY BY SIGNING THIS DOCUMENT. BY SIGNING BELOW, YOU AGREE TO WAIVE THE PROTECTION FROM GARNISHMENT.

I certify that I read and understood the notice above, and agree to waive the protection from garnishment before signing the attached Guaranty.

_____     Date: December 21, 2023
Signature of Guarantor
Name: Jacqueline Miller, Individually

I have fully explained this document to the Borrower.

Univest Bank and Trust Co.

By: _____     Date: December 21, 2023
Print Name: Claire Forloish
Title: VP Relationship Manager

{04519214;v1 }



U.S. Small Business Administration

# UNCONDITIONAL GUARANTEE

| SBA Loan # |  |
| --- | --- |
| SBA Loan Name | UMK SLI, LLC |
| Guarantor | Brian Umholtz |
| Borrower | UmMiller 1295, LLC, and UMK SLI, LLC |
| Lender | Univest Bank and Trust Co. |
| Date | December 21, 2023 |
| Note Amount | $830,000.00 |

1.     GUARANTEE:

    Guarantor unconditionally guarantees payment to Lender of all amounts owing under the Note. This Guarantee remains in effect until the Note is paid in full. Guarantor must pay all amounts due under the Note when Lender makes written demand upon Guarantor. Lender is not required to seek payment from any other source before demanding payment from Guarantor.

2.     NOTE:

    The "Note" is the promissory note dated of even date herewith in the principal amount of Eight Hundred Thirty Thousand Dollars from Borrower to Lender. It includes any assumption, renewal, substitution, or replacement of the Note, and multiple notes under a line of credit.

3.     DEFINITIONS:

    "Collateral" means any property taken as security for payment of the Note or any guarantee of the Note.

    "Loan" means the loan evidenced by the Note.

    "Loan Documents" means the documents related to the Loan signed by Borrower, Guarantor or any other guarantor, or anyone who pledges Collateral.

    "SBA" means the Small Business Administration, an Agency of the United States of America.

{04519238;v2 }
SBA Form 148 (10/98) Previous editions obsolete.

Page 1/5

Case 1:25-bk-03327-HWV Doc 29 Filed 01/13/25 Entered 01/13/25 14:58:27 Page 28 of
Main Document 75 Page 28 of 82

4. **LENDER'S GENERAL POWERS:**

Lender may take any of the following actions at any time, without notice, without Guarantor's consent, and without making demand upon Guarantor:

A. Modify the terms of the Note or any other Loan Document except to increase the amounts due under the Note;

B. Refrain from taking any action on the Note, the Collateral, or any guarantee;

C. Release any Borrower or any guarantor of the Note;

D. Compromise or settle with the Borrower or any guarantor of the Note;

E. Substitute or release any of the Collateral, whether or not Lender receives anything in return;

F. Foreclose upon or otherwise obtain, and dispose of, any Collateral at public or private sale, with or without advertisement;

G. Bid or buy at any sale of Collateral by Lender or any other lienholder, at any price Lender chooses; and

H. Exercise any rights it has, including those in the Note and other Loan Documents.

These actions will not release or reduce the obligations of Guarantor or create any rights or claims against Lender.

5. **FEDERAL LAW:**

When SBA is the holder, the Note and this Guarantee will be construed and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Guarantee, Guarantor may not claim or assert any local or state law against SBA to deny any obligation, defeat any claim of SBA, or preempt federal law.

6. **RIGHTS, NOTICES, AND DEFENSES THAT GUARANTOR WAIVES:**

To the extent permitted by law,

A. Guarantor waives all rights to:

    1) Require presentment, protest, or demand upon Borrower;

    2) Redeem any Collateral before or after Lender disposes of it;

    3) Have any disposition of Collateral advertised; and

    4) Require a valuation of Collateral before or after Lender disposes of it.

B. Guarantor waives any notice of:

    1) Any default under the Note;

    2) Presentment, dishonor, protest, or demand;

    3) Execution of the Note;

    4) Any action or inaction on the Note or Collateral, such as disbursements, payment, nonpayment, acceleration, intent to accelerate, assignment, collection activity, and incurring enforcement expenses;

    5) Any change in the financial condition or business operations of Borrower or any guarantor;

    6) Any changes in the terms of the Note or other Loan Documents, except increases in the amounts due under the Note; and

    7) The time or place of any sale or other disposition of Collateral.

C. Guarantor waives defenses based upon any claim that:

    1) Lender failed to obtain any guarantee;

    2) Lender failed to obtain, perfect, or maintain a security interest in any property offered or taken as Collateral;

    3) Lender or others improperly valued or inspected the Collateral;

    4) The Collateral changed in value, or was neglected, lost, destroyed, or underinsured;

{04519238;v2 }
SBA Form 148 (10/98)  Previous editions obsolete.

Page 2/5

| | 5) | Lender impaired the Collateral; |
|---|---|---|
| | 6) | Lender did not dispose of any of the Collateral; |
| | 7) | Lender did not conduct a commercially reasonable sale; |
| | 8) | Lender did not obtain the fair market value of the Collateral; |
| | 9) | Lender did not make or perfect a claim upon the death or disability of Borrower or any guarantor of the Note; |
| | 10) | The financial condition of Borrower or any guarantor was overstated or has adversely changed; |
| | 11) | Lender made errors or omissions in Loan Documents or administration of the Loan; |
| | 12) | Lender did not seek payment from the Borrower, any other guarantors, or any Collateral before demanding payment from Guarantor; |
| | 13) | Lender impaired Guarantor's suretyship rights; |
| | 14) | Lender modified the Note terms, other than to increase amounts due under the Note. If Lender modifies the Note to increase the amounts due under the Note without Guarantor's consent, Guarantor will not be liable for the increased amounts and related interest and expenses, but remains liable for all other amounts; |
| | 15) | Borrower has avoided liability on the Note; or |
| | 16) | Lender has taken an action allowed under the Note, this Guarantee, or other Loan Documents. |

7. **DUTIES AS TO COLLATERAL:**
Guarantor will preserve the Collateral pledged by Guarantor to secure this Guarantee. Lender has no duty to preserve or dispose of any Collateral.

8. **SUCCESSORS AND ASSIGNS:**
Under this Guarantee, Guarantor includes heirs and successors, and Lender includes its successors and assigns.

9. **GENERAL PROVISIONS:**

A. ENFORCEMENT EXPENSES. Guarantor promises to pay all expenses Lender incurs to enforce this Guarantee, including, but not limited to, attorney's fees and costs.

B. SBA NOT A CO-GUARANTOR. Guarantor's liability will continue even if SBA pays Lender. SBA is not a co-guarantor with Guarantor. Guarantor has no right of contribution from SBA.

C. SUBROGATION RIGHTS. Guarantor has no subrogation rights as to the Note or the Collateral until the Note is paid in full.

D. JOINT AND SEVERAL LIABILITY. All individuals and entities signing as Guarantor are jointly and severally liable.

E. DOCUMENT SIGNING. Guarantor must sign all documents necessary at any time to comply with the Loan Documents and to enable Lender to acquire, perfect, or maintain Lender's liens on Collateral.

F. FINANCIAL STATEMENTS. Guarantor must give Lender financial statements as Lender requires.

G. LENDER'S RIGHTS CUMULATIVE, NOT WAIVED. Lender may exercise any of its rights separately or together, as many times as it chooses. Lender may delay or forgo enforcing any of its rights without losing or impairing any of them.

H. ORAL STATEMENTS NOT BINDING. Guarantor may not use an oral statement to contradict or alter the written terms of the Note or this Guarantee, or to raise a defense to this Guarantee.

I. SEVERABILITY. If any part of this Guarantee is found to be unenforceable, all other parts will remain in effect.

J. CONSIDERATION. The consideration for this Guarantee is the Loan or any accommodation by Lender as to the Loan.

{04519238;v2 }
SBA Form 148 (10/98) Previous editions obsolete.                                    Page 3/5

Case 1:25-bk-03327-HWV    Doc 29    Filed 02/13/25    Entered 02/13/25 14:58:27    Page 23 of
Main Document75    Page 30 of 82

10.    STATE-SPECIFIC PROVISIONS:

CONFESSION OF JUDGMENT.  THE UNDERSIGNED HEREBY IRREVOCABLY AUTHORIZES AND EMPOWERS ANY ATTORNEY-AT-LAW TO APPEAR IN ANY COURT OF RECORD AND TO CONFESS JUDGMENT AGAINST THE UNDERSIGNED FOR THE UNPAID AMOUNT OF THE NOTE AS EVIDENCED BY AN AFFIDAVIT SIGNED BY AN OFFICER OF LENDER SETTING FORTH THE AMOUNT THEN DUE, TOGETHER WITH ALL INDEBTEDNESS PROVIDED FOR THEREIN (WITH OR WITHOUT ACCELERATION OF MATURITY), PLUS ATTORNEYS' FEES OF TEN PERCENT (10%) OF THE TOTAL INDEBTEDNESS OR FIVE THOUSAND DOLLARS ($5,000.00), WHICHEVER IS THE LARGER AMOUNT FOR THE COLLECTION, WHICH GUARANTOR AND LENDER AGREE IS REASONABLE, PLUS COSTS OF SUIT, AND TO RELEASE ALL ERRORS, AND WAIVE ALL RIGHTS OF APPEAL. THE UNDERSIGNED EXPRESSLY RELEASES ALL ERRORS, WAIVES ALL STAY OF EXECUTION, RIGHTS OF INQUISITION AND EXTENSION UPON ANY LEVY UPON REAL ESTATE AND ALL EXEMPTION OF PROPERTY FROM LEVY AND SALE UPON ANY EXECUTION HEREON; AND THE UNDERSIGNED EXPRESSLY AGREES TO CONDEMNATION AND EXPRESSLY RELINQUISHES ALL RIGHTS TO BENEFITS OR EXEMPTIONS UNDER ANY AND ALL EXEMPTION LAWS NOW IN FORCE OR WHICH MAY HEREAFTER BE ENACTED.  NO SINGLE EXERCISE OF THE FOREGOING WARRANT AND POWER TO CONFESS JUDGMENT WILL BE DEEMED TO EXHAUST THE POWER, WHETHER OR NOT ANY SUCH EXERCISE SHALL BE HELD BY ANY COURT TO BE INVALID, VOIDABLE OR VOID; BUT THE POWER WILL CONTINUE UNDIMINISHED AND MAY BE EXERCISED FROM TIME TO TIME AS LENDER MAY ELECT UNTIL ALL AMOUNTS OWING ON THIS NOTE HAVE BEEN PAID IN FULL.  THE UNDERSIGNED HEREBY WAIVES AND RELEASES ANY AND ALL CLAIMS OR CAUSES OF ACTION WHICH THE UNDERSIGNED MIGHT HAVE AGAINST ANY ATTORNEY ACTING UNDER THE TERMS OF AUTHORITY WHICH THE UNDERSIGNED HAS GRANTED HEREIN ARISING OUT OF OR CONNECTED WITH THE CONFESSION OF JUDGMENT HEREUNDER.

{04519238;v2 }
SBA Form 148 (10/98)  Previous editions obsolete.

Page 4/5

11.     GUARANTOR ACKNOWLEDGMENT OF TERMS:

Guarantor acknowledges that Guarantor has read and understands the significance of all terms of the Note and this Guarantee, including all waivers.

12.     GUARANTOR NAME(S) AND SIGNATURE(S):

By signing below, each individual or entity becomes obligated as Guarantor under this Guarantee.

_____

Brian Umholtz, Individually

{04519238;v2 }

Guarantor(s):  Brian Umholtz

Lender:  Univest Bank and Trust Co.

Date:  December 21, 2023

<u>DISCLOSURE FOR CONFESSION OF JUDGMENT</u>

I have executed a guarantee (the "Guarantee") in the original amount of $830,000.00 obligating me to repay that amount.

Initials: _____

I understand that the Guarantee contains wording that would permit Univest Bank and Trust Co. to enter judgment against me in Court, without advance notice to me and without offering me an opportunity to defend against the entry of judgment, and that the judgment may be collected immediately by any legal means.

Initials: _____

In executing the Guarantee, I am knowingly, understandingly and voluntarily waiving my rights to resist the entry of judgment against me at the courthouse, including any right to advance notice of the entry of, or execution upon, said judgment, and I am consenting to the confession of judgment.

Initials: _____

I certify that my annual income exceeds $10,000; that the blanks in this disclosure were filled in when I initialed and signed it; and that I received a copy at the time of signing.

_____
Brian Umholtz, Individually

Signed, acknowledged and delivered in the presence of:

_____
Witness

{04519238;v2 }

**Attachment to Guaranty for Florida Transactions**

**Notice To Guarantor of Garnishment Waiver**

IF YOU PROVIDE MORE THAN ONE-HALF OF THE SUPPORT FOR A CHILD OR OTHER DEPENDENT, ALL OR PART OF YOUR INCOME IS EXEMPT FROM GARNISHMENT. UNDER FLORIDA LAW. YOU CAN WAIVE THIS PROTECTION ONLY BY SIGNING THIS DOCUMENT. BY SIGNING BELOW, YOU AGREE TO WAIVE THE PROTECTION FROM GARNISHMENT.

I certify that I read and understood the notice above, and agree to waive the protection from garnishment before signing the attached Guaranty.

_____     Date: December 21, 2023
Signature of Guarantor
Name: Brian Umholtz, Individually

I have fully explained this document to the Borrower.

Univest Bank and Trust Co.

By: _____     Date: December 21, 2023
Print Name: Claine Forsith
Title: VP Relationship Manager

# EXHIBIT "C"



*YORK COUNTY RECORDER OF DEEDS*
*28 EAST MARKET STREET*
*YORK, PA 17401*

*Laura Shue - Recorder*
*Tina M. Channell - Deputy*

Instrument Number - 2023050244
Recorded On 12/28/2023 At 8:27:17 AM
* **Instrument Type - MORTGAGE**
Invoice Number - 1565064
* Grantor - MILLER, JACQUELINE L
* Grantee - UNIVEST BANK AND TRUST CO
User - JLC
* Customer - MPL LAW FIRM, LLP

Book - 2810   Starting Page - 5379
* Total Pages - 23

* Received By:  ERECORD

\* **FEES**

| | |
|---|---:|
| STATE WRIT TAX | $0.50 |
| JCS/ACCESS TO JUSTICE | $40.25 |
| RECORDING FEES | $49.00 |
| AFFORDABLE HOUSING | $11.50 |
| PIN NUMBER FEES | $10.00 |
| BLIGHT DEMOLITION FUND | $15.00 |
| COUNTY ARCHIVES FEE | $2.00 |
| ROD ARCHIVES FEE | $3.00 |
| TOTAL PAID | $131.25 |

| York County UPI Certification |
|---|
| On December 28, 2023 By JV |

PARCEL IDENTIFICATION NUMBER
35000JK0151B000000
Total Parcels: 1

I Certify This Document To Be
Recorded In York County, Pa.



Recorder of Deeds

*THIS IS A CERTIFICATION PAGE*
# *PLEASE DO NOT DETACH*
*THIS PAGE IS NOW PART OF THIS LEGAL DOCUMENT*

**\* - Information denoted by an asterisk may change during the verification process and may not be reflected on this page.**

Book: **2810** Page: **5401**

Prepared by and return to:
Demetri A. Braynin, Esquire
Starfield & Smith, P.C.
1300 Virginia Drive, Suite 325
Fort Washington, PA 19034

Parcel Number: 35-000-JK-0151.B0-00000
20 Sharpshin Lane / Lower Windsor Township

## MORTGAGE

**NOTICE: THIS DOCUMENT SECURES A VARIABLE INTEREST RATE NOTE AND CONTAINS PROVISIONS FOR INCREASES UNDER CERTAIN CIRCUMSTANCES IN THE PRINCIPAL BALANCE OF THE INDEBTEDNESS SECURED HEREBY**

THIS MORTGAGE is made on December 21, 2023, by and between **Brian D. Umholtz and Jacqueline L. Miller, husband and wife**, with an address of 4839 Deep Creek Terr, Parrish, FL 34219 (the "**Mortgagor**"), and **Univest Bank and Trust Co.**, with an address of 14 North Main Street, Souderton, PA 18964 (the "**Mortgagee**").

### RECITALS

Mortgagee, has agreed, pursuant to a Loan Agreement of even date herewith (the "**Loan Agreement**"), and subject to the terms set forth therein, to make a loan to UmMiller 1295, LLC, and UMK SLI, LLC (the "**Borrower**") in an aggregate amount of **Eight Hundred Thirty Thousand Dollars and No Cents ($830,000.00)** (the "**Loan**") which is being guaranteed by Mortgagor (the "**Guarantee**"), the Loan Agreement and Guarantee constituting the consideration for this Mortgage.

Borrower has duly executed a promissory note of even date herewith (the "**Note**") to evidence the terms of repayment of the Loan with interest at the rate or rates established from time to time in accordance with the terms set forth therein, which Note has been delivered by Borrower to the Mortgagee (the Mortgagee and any assignee or other lawful owner of the Note being hereinafter sometimes called "**Holder**"). Mortgagor has duly executed the Guarantee to support the obligations of the Borrower to repay the Loan. All references herein to the Note and the obligations arising thereunder shall be deemed to include the Guarantee and all obligations arising under the Guarantee.

All things necessary to make the Guarantee the valid, binding and legal obligation of Mortgagor, to make the Note the valid, binding and legal obligation of Borrower, and to make this Mortgage a valid, binding and legal instrument for the security of the Note in accordance with its terms, have been duly performed, and the execution and delivery of the Note by Borrower and the Guarantee and this Mortgage by Mortgagor have been in all respects duly authorized.

{04519182;v3 }

1

It has been agreed that the repayment of the Loan with interest, according to the terms of the Note and any alterations, modifications, substitutions, extensions or renewals thereof, as well as the performance of the other covenants, terms and conditions herein, should be secured by the execution of this Mortgage, which also shall secure payment by Mortgagor of all costs and expenses incurred in respect to the Loan, including reasonable attorney's fees as is hereinafter provided.

The entire unpaid balance of principal and interest, if not sooner paid, shall be due and payable Fifteen (15) years from the date hereof (the "Maturity Date"). Notwithstanding any other provision of this Mortgage, in no event shall this Mortgage secure more than Eight Hundred Thirty Thousand Dollars and No Cents ($830,000.00), plus interest; provided, however, in no event shall Mortgagee have any obligation whatsoever to advance an amount in excess of the principal amount of the Note.

This Mortgage shall secure not only existing indebtedness, but also such future advances, whether such advances are obligatory or to be made at the option of Mortgagee, or otherwise, as are made prior to the Maturity Date, to the same extent as if such future advances were made on the date of the execution of this Mortgage, but such secured indebtedness shall not exceed at any time the Loan, plus interest thereon, and any disbursements made for the payment of taxes, levies or insurance, together with interest on such disbursements. Any such future advances, whether obligatory or to be made at the option of the Mortgagee, or otherwise, may be made either prior to or after the due date of the Note or any other debts, obligations and liabilities secured by this Mortgage. This Mortgage is given for the specific purpose of securing any and all indebtedness of Mortgagor to Mortgagee (but in no event shall the secured indebtedness exceed at any time the maximum principal amount set forth in this paragraph) in whatever manner this indebtedness may be evidenced or represented, until this Mortgage is satisfied of record. All covenants and agreements contained in this Mortgage shall be applicable to all further advances made by Mortgagee to Mortgagor under this future advance clause.

NOW, THEREFORE, WITNESSETH: in consideration of the premises and of other good and valuable considerations, the receipt of which is hereby acknowledged, Mortgagor mortgages, grants, assigns, conveys and transfers unto the Mortgagee, its successor or successors and assigns, in fee simple, WITH MORTGAGE COVENANTS, all that land situate in **York County, Pennsylvania, being commonly known as 20 Sharpshin Lane, York, Parcel Number: 35-000-JK-0151.B0-00000 and more particularly described in Exhibit A attached hereto and made a part hereof** (the "**Land**") and the buildings, structures, fixtures, additions, enlargements, extensions, modifications, repair, replacements and improvements now or hereafter located thereon (hereinafter sometimes called the "**Improvements**").

TOGETHER with all the walks, fences, shrubbery, driveways, fixtures, equipment, machinery, apparatus, fittings, building materials and other articles of personal property of every kind and nature whatsoever, now or hereafter ordered for eventual delivery to the Land (whether or not delivered thereto), and all such as are now or hereafter located in or upon any interest or estate in the Land or any part thereof and used or usable in connection with any present or future operation of the Land now owned or hereafter acquired by Mortgagor, including, without limiting the generality of the foregoing, all heating, lighting, laundry, clothes washing, clothes drying, incinerating and power equipment, engines, pipes, tanks, motors, conduits, switchboards, plumbing, lifting, cleaning, fire-prevention, fire-extinguishing, refrigerating, ventilating, and communications apparatus, television sets, radio systems, recording systems, computer equipment, air-cooling and air-conditioning apparatus, elevators, escalators, shades, awnings, draperies, curtains, fans, furniture, furnishings, carpeting, linoleum and other floor coverings, screens, storm doors and windows, stoves, gas and electric ranges, refrigerators, garbage disposals, sump pumps, dishwashers, washers, dryers, attached cabinets, partitions, ducts and compressors, landscaping, swimming pools, lawn and garden equipment, security systems and including all equipment installed or to be installed or used or usable in the operation of the building or buildings or appurtenant facilities erected or to be erected in or upon the Land; it being understood that all of the aforesaid shall be deemed to be fixtures and part of the Land, but whether or not of the nature of fixtures they shall be deemed and shall constitute part of the security for the Obligations herein mentioned and shall be covered by this Mortgage excluding, however, only personal property owned by any tenant actually occupying all or part of the premises. Disposition of any of the aforesaid or of any interest therein is prohibited; however, if any disposition is made in violation hereof, the Mortgagee shall have a security interest in the proceeds therefrom to the fullest extent permitted by the laws of Pennsylvania; and

{04519182;v3 }

TOGETHER with all and singular the rights, alleys, ways, waters, easements, tenements, privileges, advantages, accessions, hereditaments and appurtenances belonging or in any way appertaining to the Land and other property described herein, and the reversions and remainders, earnings, revenues, rents, issues and profits thereof and including any right, title, interest or estate hereafter acquired by Mortgagor in the Land and other property described herein; and

TOGETHER with all the right, title and interest (but not the obligations) of Mortgagor, present and future, in and to all present and future accounts, contract rights (including all fees and other obligations set forth in the Mortgagee's commitment to make the Loan), general intangibles, chattel paper, documents and instruments including but not limited to licenses, construction contracts, service contracts, utility contracts, options, permits, public works agreements, bonds, deposits and payments thereunder, relating or appertaining to the Land and other property described herein and its development, occupancy and use; and

TOGETHER with any right to payment or for services rendered, whether or not yet earned by performance, arising from the operation of the improvements or any other facility on the Land, including, without limitation, (1) all accounts arising from the operation of the improvements and all proceeds thereof (whether cash or non-cash, movable or immovable, tangible or intangible) received upon the sale, exchange, transfer, collection or other disposition or substitution thereof, and (2) all rights to payment from any consumer credit/charge card organization or entity, including, without limitation, payments arising from the use of the American Express Card, Visa Card, Carte Blanche Card, MasterCard, Diner's Club, or any other credit card, including those now existing or hereinafter created or any substitution therefor and all proceeds thereof (whether cash or non-cash, movable or immovable, tangible or intangible) received upon the sale, exchange, transfer, collection or other disposition or substitution thereof; and

TOGETHER with all of the rents, royalties, revenues, income, proceeds, profits and other benefits paid or payable by parties to the leases for using, leasing, licensing, possessing, occupying, operating from, residing in, selling or otherwise enjoying the Land, the Improvements, and other property securing the Obligations, or any portion thereof. As used in this Mortgage, the word **"leases"** includes any and all leases, subleases, licenses, concessions, reservations, accounts, permits, contracts, and other agreements (oral or written, now or hereafter in effect) which grant a possessory interest or right of occupancy in and to, or the right to use, or affect all or part of the Land, the improvements, and other property securing the Obligations, or any portion thereof; and

TOGETHER with all proceeds of and any unearned premiums on any insurance policies covering the Property (hereinafter defined), including, without limitation, the right to receive and apply the proceeds of any insurance, judgments, or settlements made in lieu thereof, for damage to the Property or any part thereof; and

TOGETHER with all proceeds derived from any taking by condemnation or eminent domain proceedings or transfer in place or in anticipation thereof of all or any part of the property described in these granting clauses;

TO HAVE AND TO HOLD the Land with Improvements thereupon and all the rights, easements, profits and appurtenances and other property described above (all of which is hereinafter sometimes called the **"Property"**) belonging unto and to the use of the Mortgagee, and its successor or successors and assigns, in fee simple forever;

PROVIDED, HOWEVER, that the Property shall not include personal property, exclusive of fixtures (**"Personal Property"**), and any and all references in this Mortgage which purport to grant a security interest in Personal Property owned by the Mortgagor, and located in or on the Property, are hereby struck from this Mortgage and the Mortgagee hereby disclaims any such security interest, whether now or hereafter acquired.

BUT for and upon the uses, intents and purposes hereinafter mentioned, that is to say for the benefit and security of Mortgagee and for the enforcement of the payment of the Loan, the Note and all other loans, advances, hedging instruments, debts, liabilities, obligations, covenants and duties owing by the Borrower and/or Mortgagor to the Mortgagee (and its successors and/or assigns) of any kind or nature, present or future (including any interest accruing thereon after maturity, or after the filing of any petition in bankruptcy, or the commencement of any insolvency, reorganization or like proceeding relating to the Borrower or Mortgagor, whether or not a claim for post-filing or post-petition interest is allowed in such proceeding), whether direct or indirect (including those acquired by assignment or participation), absolute or contingent, joint or several, due or to become due, now existing

or hereafter arising, express or implied, under any documents evidencing or executed in connection with any of the foregoing; and any amendments, extensions, substitutions, renewals, replacements and/or increases of or to any of the foregoing, and all costs and expenses of the Mortgagee incurred in the documentation, negotiation, modification, enforcement, collection and otherwise in connection with any of the foregoing, including reasonable attorneys' fees and expenses (hereinafter referred to collectively as the "**Obligations**"). Unless expressly provided to the contrary in documentation for any other loan or loans, it is the express intent of the Mortgagee, the Borrower and the Mortgagor that all Obligations, including those included in, arising out of or related to the Loan, be cross-collateralized and cross-defaulted, such that collateral securing any of the Obligations shall secure repayment of all Obligations and a default under any Obligation shall be a default under all Obligations;

SUBJECT, HOWEVER, to the liens and rights of the holders of the contracts and instruments secured by any instruments that may be described in <u>Exhibit B</u> to this Mortgage (the "**Permitted Encumbrances**");

PROVIDED, HOWEVER, that if Mortgagor shall pay or cause to be paid to Mortgagee all sums secured hereby in the manner stipulated in the Note, the Loan Agreement and this Mortgage, then and in such case, the estate, right, title and interest of the Mortgagee in the Property shall cease, determine and become void, and upon proof being given to the satisfaction of the Mortgagee that the Note has been paid or satisfied, in accordance with its terms and upon payment of all fees, costs, charges, expenses and liabilities chargeable or incurred or to be incurred by the Mortgagee and of any other sums as in this Mortgage provided, the Mortgagee shall at the expense of Mortgagor, release and discharge this Mortgage of record, and shall transfer and deliver up to Mortgagor any property at the time subject to this Mortgage which may be then in their possession, provided the Mortgagee hereunder shall be entitled to a reasonable fee for the release and reconveyance of the Property or any partial release and reconveyance;

AND THIS MORTGAGE FURTHER WITNESSETH, that Mortgagor (jointly and severally if more than one) has covenanted and agreed and does hereby covenant and agree with the Mortgagee as follows:

## ARTICLE 1. DEFINITIONS

1.1     **Definitions.** All capitalized terms used herein and not otherwise defined shall have the respective meanings set forth or referred to in the Loan Agreement.

## ARTICLE 2. COVENANTS AND AGREEMENTS OF MORTGAGOR

2.1     **Incorporation of Covenants, Conditions and Agreements.** All the covenants, conditions and agreements contained in the Loan Agreement, the Note, and the other Loan Documents are hereby made a part of this Mortgage to the same extent and with the same force as if fully set forth herein.

2.2     **Title to the Property.** Mortgagor covenants that at the time of the execution and delivery of this Mortgage it has good title to all of the property described in the granting clauses of this Mortgage as being presently granted, assigned, conveyed and transferred hereunder, free and clear of all liens and encumbrances except for the Permitted Encumbrances; Mortgagor hereby does and will forever warrant generally and defend the title to the Property, and every part thereof, whether now owned or hereafter acquired, unto the Mortgagee and its successor or successors in the trust and assigns, against all claims and demands by any person or entity whatsoever; Mortgagor covenants that Mortgagor shall comply with all the terms, covenants and conditions of all agreements and instruments, recorded and unrecorded, affecting the Property; Mortgagor covenants that it has good right and lawful authority to mortgage, give, grant, pledge, assign and convey the Property in the manner and form herein provided.

2.3     **Further Assurances.** At any and all times Mortgagor shall furnish and record all and every such further assurances as may be requisite or as the Mortgagee shall reasonably require for the better assuring and confirming unto the Mortgagee the estate and property hereby granted, assigned, conveyed or transferred, or intended so to be whether now owned or hereafter acquired; Mortgagor shall bear all expenses, charges and taxes in connection therewith.

2.4     **Escrow for Taxes.** Subject to any limitations and consistent with any requirements set by applicable law, Lender may require Mortgagor to maintain with Lender reserves for payment of annual taxes,

{04519182;v3 }

4

assessments, and insurance premiums, which reserves shall be created by an initial deposit and subsequent monthly payments, or payments at such other interval as payments under the Note may be due, of a sum estimated by Lender to be sufficient to pay the total annual taxes, assessments, and insurance premiums Lender reasonably anticipates to be paid from these reserves. The reserve funds shall be held by Lender as a general deposit from Mortgagor, which Lender may satisfy by payment of the taxes, assessments, and insurance premiums required to be paid by Mortgagor as they become due. Lender shall have the right to draw upon the reserve funds to pay such items, and Lender shall not be required to determine the validity or accuracy of any item before paying it. Nothing in the Mortgage shall be construed as requiring Lender to advance other monies for such purposes, and Lender shall not incur any liability for anything it may do or omit to do with respect to the reserve account. Subject to any limitations set by applicable law, if the reserve funds disclose a shortage or deficiency, Mortgagor shall pay such shortage or deficiency as required by Lender. All amounts in the reserve account are hereby pledged to further secure the Indebtedness, and Lender is hereby authorized to withdraw and apply such amounts on the Indebtedness upon the occurrence of an Event of Default. Lender shall not be required to pay any interest or earnings on the reserve funds unless required by law or agreed to by Lender in writing. Lender does not hold the reserve funds in trust for Mortgagor, and Lender is not Mortgagor's agent for payment of the taxes and assessments required to be paid by Mortgagor.

2.5     **Change in Tax Law.** In the event of the passage after date of this Mortgage of any law changing in any way the laws for the taxation of deeds of trust or debts secured by deeds of trust, or the manner of collection of any such taxation so as to affect this Mortgage, Mortgagee may give thirty (30) days' written notice to Mortgagor requiring the payment of the Obligations secured hereby. If such notice be given, the Obligations secured hereby shall become due and payable at the expiration of said thirty (30) days; *provided, however,* that such requirement of payment shall be ineffective if Mortgagor is permitted by law to pay the whole of such tax in addition to all other payments required hereunder, without any penalty or charge thereby accruing to Mortgagee, and if Mortgagor in fact pays such tax prior to the date upon which payment is required by such notice.

2.6     **Activities on the Property.**

(a)     Mortgagor shall not suffer any act to be done or any conditions to exist on the Property or any part thereof or any thing or article to be brought thereon (i) which may cause structural injury to the improvements on the Land; or (ii) which would cause the value or usefulness of the Property or any part thereof to diminish (ordinary wear and tear excepted); or (iii) which may be dangerous, unless safeguarded as required by law; or (iv) which may in fact or in law, constitute a nuisance, public or private; or (v) which may void or make voidable any insurance then in force or required by the terms of this Mortgage, the Loan Agreement to be in force.

(b)     Mortgagor shall not use or occupy the Property, and shall not suffer or permit any tenant under any lease to use or occupy the Property, in any manner that would constitute a violation of any state and/or federal laws involving controlled substances, even in a jurisdiction that allows such use by state or local law or ordinance. In the event that Mortgagor becomes aware of such a violation, Mortgagor shall take all actions permitted by law to terminate the activity constituting such violation. Any violation of this Section 2.6(b) is a material breach of this Mortgage and constitutes an Event of Default under Section 3.3 hereof.

2.7     **Additional Insurance.** If required by the Mortgagee, in addition to the provisions of and to the extent not so provided by the Loan Agreement, Mortgagor shall at all times maintain during the entire term of this Mortgage the following insurance, in form and substance satisfactory to Mortgagee:

(a)     *Hazard/Property Insurance.* Mortgagor shall obtain and keep in effect hazard and property insurance to protect against fire, theft, damage, and other risks (including, if required, flood) in coverage to full extent required by Mortgagee, but in no event, less than total replacement value for all casualty policies;

(b)     *General Liability Insurance.* Mortgagor shall obtain and keep in effect insurance against liability on account of damage to persons or property in coverage to full extent required by Mortgagee;

(c) *Workers' Compensation.* During any construction, repair, restoration or replacement of improvements on the Land, Mortgagor shall cause all contractors and subcontractors (including Mortgagor if it acts as a contractor) to obtain and keep in effect workers' compensation insurance to the full extent required by applicable law and also which shall cover all employees of each contractor and subcontractor; upon demand, Mortgagor shall provide evidence satisfactory to Mortgagee that it is complying with this covenant; and

(d) *Additional Insurance.* All other insurance required by this Mortgage or by the Loan Documents.

All insurance for loss or damage shall provide that losses, if any, shall be payable to Mortgagee, as its interest may appear. Mortgagor will pay the premiums for all insurance and deliver to Mortgagee the policies of insurance or duplicates thereof, or other evidence satisfactory to Mortgagee of such insurance coverage. Each insurer shall agree, by endorsement upon the policy or policies issued by it, or by independent instrument furnished to Mortgagee, that (i) it will give Mortgagee thirty (30) days' prior written notice of the effective date of any material alteration or cancellation of such policy; and (ii) the coverage of Mortgagee shall not be terminated, reduced or affected in any manner regardless of any breach or violation by Mortgagor of any warranties, declarations or conditions of such insurance policy or policies. The proceeds of such insurance shall be applied, at Mortgagee's option, toward the replacement, restoration or repair of the Property which may be lost, stolen or destroyed or damaged or toward payment of any Obligations of Mortgagor to Mortgagee.

2.8     **Additional Advances.** If Mortgagor shall fail to perform any of the covenants or satisfy any of the conditions contained herein, Mortgagee may make advances or payments towards performance or satisfaction of the same but shall be under no obligation so to do; and all sums so advanced or paid shall be at once repayable by Mortgagor and shall bear interest at the Default Rate from the date the same shall become due and payable until the date paid, and all sums so advanced or paid, with interest as aforesaid, shall become a part of the Obligations secured hereby; but no such advance or payment shall relieve Mortgagor from any default hereunder. If Mortgagor shall fail to perform any of the covenants or satisfy any of the conditions contained herein, Mortgagee may use any funds of Mortgagor towards performance or satisfaction of the same but shall be under no obligation so to do; and no such use of funds shall relieve Mortgagor from any default hereunder.

2.9     **Condemnation Awards.** Should the grade of any street be altered or all or any part of the Property be condemned or taken through eminent domain proceedings, all or such part of any award or proceeds derived therefrom, as Mortgagee in its sole discretion may determine in writing, shall be paid to Mortgagee and applied to the payment of the Obligations secured hereby (in such manner or combination thereof, including inverse order of maturity of installments of principal, if any, as Mortgagee may, in its sole discretion, elect) and all such proceeds are hereby assigned to Mortgagee.

2.10    **Costs of Defending and Enforcing the Lien.** Mortgagor shall pay all costs, charges and expenses, including appraisals, title examinations, and reasonable attorney's fees, which Mortgagee may incur in defending or enforcing the validity or priority of the legal operation and effect of this Mortgage, or any term, covenant or condition hereof, or in collecting any sum secured hereby, or in protecting the security of Mortgagee including without limitation being a party in any condemnation, bankruptcy or administrative proceedings, or, if an Event of Default shall occur, in administering and executing the trust hereby created and performing their powers, privileges and duties hereunder. Mortgagee may make advances or payments for such purposes but all advances or payments made by Mortgagee for such purposes shall be repayable immediately by Mortgagor and shall bear interest at the Default Rate from the date the same shall become due and payable until the date paid, and any such sum or sums with interest as aforesaid shall become a part of the Obligations secured hereby; but no such advance or payment shall relieve Mortgagor from any default hereunder.

2.11    **Modification of Terms; No Novation.** Mortgagee may at any time, and from time to time, extend the time for payment of the Obligations secured hereby, or any part thereof, or interest thereon, and waive, modify or amend any of the terms, covenants or conditions in the Note, in the Guarantee, in this Mortgage or in any other Loan Document, in whole or in part, either at the request of Mortgagor or of any person having an interest in the Property, accept one or more notes in replacement or substitution of the Note, consent to the release of all or any part of the Property from the legal operation and effect of this Mortgage, take or release other security, release any party primarily or secondarily liable on the Note or hereunder or on such other security, grant extensions, renewals

or indulgences therein or herein, apply to the payment of the principal and interest and premium, if any, of the Obligations secured hereby any part or all of the proceeds obtained by sale or otherwise as provided herein, without resort or regard to other security, or resort to any one or more of the securities or remedies which Mortgagee may have and which in its absolute discretion it may pursue for the payment of all or any part of the Obligations secured hereby, in such order and in such manner as it may determine, all without in any way releasing Mortgagor or any party secondarily liable from any of the terms, covenants or conditions of the Note, the Guarantee, this Mortgage, or any other Loan Document, or relieving the unreleased Property from the legal operation and effect of this Mortgage for all amounts owing under the Note, the Loan Agreement and this Mortgage. Mortgagee and Mortgagor recognize and agree that the provisions of this Mortgage, the Note, the Guarantee, and any other Loan Document may be modified by them or their successors or assigns at any time before or after default (which modification may involve increasing the rate of interest in the Note, agreeing that other charges should be paid, or modifying any other provision in any such instruments). Mortgagee may extend the time of payment, may agree to alter the terms of payment of the Obligations, and may grant partial releases of any portion of the property included herein. No such modification by Mortgagee and Mortgagor nor any such action by Mortgagee or the Mortgagor referred to above shall be a substitution or novation of the original Obligations or instruments evidencing or securing the same, but shall be considered a possible occurrence within the original contemplation of the parties.

      2.12    **Governmental Action Affecting the Property.** Mortgagor agrees that in the event of the enactment of any law or ordinance, the promulgation of any zoning or other governmental regulation, or the rendition of any judicial decree restricting or affecting the use of the Property or rezoning the area wherein the same shall be situate which Mortgagee reasonably believes adversely affects the Property, Mortgagee may, upon at least sixty (60) days written notice to Mortgagor, require payment of the Obligations secured hereby at such time as may be stipulated in such notice, and the whole of the Obligations secured hereby, shall thereupon become due and payable.

## ARTICLE 3. EVENTS OF DEFAULT

      The occurrence of one or more of the following events (herein called an **"Event of Default"**) shall constitute and be an Event of Default:

      3.1    **Default under Loan Documents.** The occurrence and continuance of an Event of Default under the Loan Agreement, the Note or any other Loan Document shall constitute an Event of Default hereunder. In the event Mortgagee consents to an encumbrance on the Property, a default under the terms of any document creating such an encumbrance shall be a default hereunder.

      3.2    **Additional Insurance Obligations.** Mortgagor fails to promptly perform or comply with any of the terms and conditions set forth in subsection 2.7.

      3.3    **Material Obligations.** Mortgagor fails to perform or observe any of its material obligations under this Mortgage.

      3.4    **Judgment.** Unless adequately covered by insurance in the reasonable opinion of Mortgagee, the entry of a final judgment for the payment of money involving more than $10,000.00 against Mortgagor or any guarantor of the Loan and the failure of Mortgagor or any guarantor of the Loan to cause the same to be discharged or bonded off to the satisfaction of Mortgagee within sixty (60) days from the date the order, decree or process under which or pursuant to which such judgment was entered.

      3.5    **Transfer of the Property.** If all or any part of the Property or any interest in the Property is sold, transferred, assigned, conveyed or otherwise disposed of, either outright or as security for an indebtedness, or if there is any change in the ownership of Mortgagor, without Mortgagee's prior written consent, Mortgagee may, at Mortgagee's option, declare all the Obligations secured by this Mortgage to be immediately due and payable and Mortgagee may exercise any or all of the remedies provided in Paragraph 4 hereunder.

## ARTICLE 4. REMEDIES

4.1 **Remedies-Acceleration**. If one or more of the Events of Default shall occur, Mortgagee may, at its option, declare the entire unpaid principal amount of the Note (if not already due and payable) to be due and payable immediately, and upon any such declaration the same shall become and be immediately due and payable, anything in the Note, in the Guarantee, in the Loan Agreement or in this Mortgage to the contrary notwithstanding; and in the event of any sale of all or any part of the Property, whether made under the power of sale herein granted, assent to a decree or through judicial proceedings, such unpaid principal amount shall automatically and without notice become so due and payable. If Mortgagee exercises Mortgagee's option to declare the entire unpaid principal amount of the Note to be due and payable, Mortgagor covenants to pay immediately the full amount of the Obligations secured hereby even though foreclosure or other court proceedings to collect the Obligations have not been commenced. Acceleration of maturity, once declared by Mortgagee, may at the option of Mortgagee, be rescinded by written acknowledgment to that effect by Mortgagee, but the tender and acceptance of partial payments alone shall not rescind or affect in any way such acceleration of maturity.

4.2 **Power of Sale; Assent to Decree and Other Remedies**. If one or more of the Events of Default shall occur and whether or not Mortgagee shall have accelerated the maturity of the Obligations pursuant to Section 4.1 hereof, Mortgagee, at its option, may:

(a) proceed by suit or suits at law or in equity or by any other appropriate remedy to protect and enforce the rights of Mortgagee whether for the specific performance of any covenant or agreement contained herein, or in aid of the execution of any power herein granted, or to enforce payment of the Note, of the Guarantee, or to foreclose this Mortgage, or to sell the Property under the judgment or decree of a court or courts of competent jurisdiction, or otherwise. Mortgagor, in accordance with any general or local laws or rules or regulations of Pennsylvania relating to mortgages including any amendments thereof or supplements thereto which do not materially change or impair the remedy, does hereby declare and assent to the passage of a decree to sell the Property by the equity court having jurisdiction for the sale of the Property, subject to the terms of the decree of court, the same authority and power to sell on the terms and conditions herein set forth. This assent to decree shall not be exhausted in the event the proceeding is dismissed before the Obligations secured hereby is paid in full;

(b) either with or without entering upon or taking possession of the Property, demand, collect and receive any or all revenues arising out of or in connection with the Property, including, without limitation, all rents;

(c) take possession and assemble such items of the Property as may be designated by Mortgagee and make them available to the Mortgagee at a place reasonably convenient to both parties to be designated by Mortgagee or the Mortgagee. Upon a default under this Mortgage, Mortgagee shall have the right to take possession of such items of the Property as Mortgagee may elect. In taking possession Mortgagee may proceed without judicial process if this can be done without breach of the peace. Mortgagee shall have the further right to remove such items of the Property as it may choose to any location or locations selected by Mortgagee, and Mortgagor shall pay the costs of such removal and for the storage and protection of such items immediately upon demand therefor. If Mortgagee elects to proceed under the Pennsylvania Uniform Commercial Code to dispose of some of the Property, the Mortgagee shall give Mortgagor notice by certified mail, postage prepaid, return receipt requested, of the time and place of any public sale of any of such property or of the time after which any private sale or other intended disposition thereof is to be made by sending notice to Mortgagor at least five (5) days before the time of the sale or other disposition, which provisions for notice Mortgagor and the Mortgagee agree are reasonable; *provided, however*, that nothing herein shall preclude Mortgagee from proceeding as to all the Property in accordance with the rights and remedies of Mortgagee in respect of the real property, as provided in the Pennsylvania Uniform Commercial Code, as amended from time to time;

(d) either with or without taking possession of the property, sell, lease or otherwise dispose of the Property in its then condition or following such preparation as Mortgagee deems advisable;

(e) either with or without entering upon or taking possession of the Property and without assuming any obligations of Mortgagor, thereunder, exercise the rights of Mortgagor under, use or benefit from, any of the contracts, leases or intangible property;

(f) may enter and take possession of the Property and may exclude Mortgagor, its agents and servants, wholly therefrom, and having and holding the same, may use, operate, manage and control the Property or any part thereof, and upon every such entry Mortgagee, at the expense of Mortgagor and of the Property, from time to time may make all necessary or proper repairs, renewals, replacements and useful or required\alterations, additions, betterments and improvements to and upon the Property as to it may seem judicious and pay all costs and expenses of so taking, holding and managing the same, including reasonable compensation to its employees and other agents (including, without limitation, attorney's fees and management and rental commissions) and any taxes, assessments and other charges prior to the legal operation and effect of this Mortgage which Mortgagee may deem it wise or desirable to pay, and in such case Mortgagee shall have the right to manage the Property and to carry on the business and exercise all rights and powers of Mortgagor, either in the name of Mortgagor, or otherwise, as Mortgagee shall deem advisable; and Mortgagee shall be entitled to collect and receive all rents thereof and therefrom. The taking of possession and collection of rents by Mortgagee shall not be construed to be an affirmation of any lease or acceptance of attornment with respect to any lease of all or any portion of the Property. After deducting the expenses of operating the Property and of conducting the business thereof, and of all repairs, maintenance, renewals, replacements, alterations, additions, betterments, improvements and all payments which it may be required or may elect to make for taxes or other proper charges on the Property, or any part thereof, as well as just and reasonable compensation for all its employees and other agents (including, without limitation, attorney's fees and management and rental commissions) engaged and employed, the moneys arising as aforesaid shall be applied to the Obligations secured hereby. Whenever all that is due upon the principal of and interest on the Note and under any of the terms of this Mortgage shall have been paid and all defaults made good, Mortgagee shall surrender possession to Mortgagor. The same right of entry, however, shall exist if any subsequent Event of Default shall occur. Mortgagee may, in person, by agent or by court-appointed receiver, enter upon, take possession of, and maintain full control of the Property in order to perform all acts necessary or appropriate to complete construction of the improvements and to maintain and operate the Property, including, but not limited to, the execution, cancellation or modification of leases, the making of repairs to the Property and the execution or termination of contracts providing for the construction, management or maintenance of the Property, all of such terms as Mortgagee, in its sole discretion, deems proper or appropriate;

(g) proceed by a suit or suits in law or in equity or by other appropriate proceeding to enforce payment of the Note and/or the Guarantee, or the performance of any term, covenant, condition or agreement of this Mortgage and Security Agreement or any of the other Loan Documents, or any other right, and to pursue any other remedy available to it, all as Mortgagee shall determine most effectual for such purposes;

(h) institute and maintain such suits and proceedings as Mortgagee may deem expedient to prevent any impairment of the Property by any acts which may be unlawful or in violation of this Mortgage and Security Agreement, to preserve or protect its interest in the Property and the revenues arising out of or in connection with the Property, and to restrain the enforcement of or compliance with any legislation or other governmental enactment, rule or order that would impair the security hereunder or be prejudicial to the interest of Mortgagee;

(i) apply all or any portion of the Property, or the proceeds thereof, towards (but not necessarily in complete satisfaction of) the Obligations;

(j) foreclose any and all rights or Mortgagor in and to the Property, whether by sale, entry or in any other manner provided for hereunder or under the laws of Pennsylvania;

(k) in the case of any receivership, insolvency, bankruptcy, reorganization, arrangement, adjustment, composition or other proceeding affecting Mortgagor or the creditors or property of Mortgagor,

Mortgagee, to the extent permitted by law, shall be entitled to file such proofs of claim and other documents as may be necessary or advisable in order to have the claims of Mortgagee allowed in such proceedings for the entire amount of the Obligations at the date of the institution of such proceedings and for any additional portion of the Obligations accruing after such date;

(l) exercise of any right or remedy of mortgagee or secured party under the laws of Pennsylvania.

4.3 **Appointment of a Receiver.** Until one or more of the Events of Default shall occur (but not thereafter), Mortgagor shall have possession of the Property and shall have the right to use and enjoy the same and to receive the rents thereof and therefrom. If one or more of the Events of Default shall occur, and without the requirement of any other showing, Mortgagee shall be entitled as a matter of right and to the extent permitted by law, without notice to Mortgagor, and without regard to the adequacy of the security, to the immediate appointment of a receiver of the Property and of the rents thereof and therefrom, in an ex parte proceeding with all such other powers as the court or courts making such appointment shall confer, and the rents thereof and therefrom are hereby assigned to Mortgagee as additional security under this Mortgage. Mortgagor shall deliver to the receiver appointed pursuant to the provisions of this Section, or to Mortgagee in the event of entry pursuant to the terms of the preceding Section, all original records, books, bank accounts, leases, agreements, security deposits of the tenants and all other materials relating to the operation of the Property.

4.4 **Foreclosure Sale.**

(a) If one or more of the Events of Default shall occur, the Mortgagee shall sell and in the case of default of any purchaser or purchasers shall resell all the Property as an entirety, or in such parcels and in such order as Mortgagee shall in writing request, or, in the absence of such request, as the Mortgagee may determine (Mortgagor hereby waiving for itself and for any person claiming by or through it application of the doctrine of marshalling of assets), at public auction at some convenient place or places in the jurisdiction in the state where the Property is situate, or in such other place or places as may be permitted by law, at such time, in such manner and upon such terms as the Mortgagee may fix and briefly specify in each notice of sale, which notice of sale shall state the time when, and the place where, the same is to be made, shall contain a brief general description of the property to be sold, and shall be sufficiently given if published as frequently and in such publication as may be required by law, and Mortgagee may cause such further public advertisement to be made as they may deem advisable, and any such sale may be adjourned by the Mortgagee by announcement at the time and place appointed for such sale or for such adjourned sale, and, without further notice or publication, such sale may be made at the time and place to which the same shall be so adjourned. If one or more leases are entered into or recorded subsequent to the recording of this Mortgage or are otherwise subordinate to this Mortgage, the Mortgagee shall sell, subject to any one or more of such tenancies that are designated and selected by Mortgagee.

(b) Upon the completion of any sale and compliance with all the terms thereof, the Mortgagee shall execute and deliver to the purchaser or purchasers a good and sufficient deed of conveyance, assignment and transfer, lawfully conveying, assigning and transferring the property sold. Payment to the Mortgagee of the entire purchase money shall be full and sufficient discharge of any purchaser or purchasers of the property, sold as aforesaid, for the purchase money; and no such purchaser, or his representatives, successors or assigns, after paying such purchase money and receiving the deed shall be bound to see to the application of such purchase money.

(c) In the case of any sale of the Property or of any part thereof, whether under the power of sale herein granted, assent to decree or through other judicial proceedings, the purchase money, proceeds and avails thereof, together with any other sums which may then be held as security hereunder or be due under any of the provisions hereof as a part of the Property, shall be applied as follows:

FIRST, to pay all proper costs, charges, fees and expenses, including the fees and costs herein provided for and to pay the costs of appraisals of the Property and the costs of title examination; and to pay or repay to Mortgagee all moneys advanced by them or either of them for taxes, insurance or otherwise, with interest thereon as provided herein; and to

Case 1:25-bk-03327-HWV    Doc 29    Filed 01/23/25    Entered 01/23/25 14:58:27    Desc
Main Document    Page 46 of 82

pay all taxes due upon the Property at the time of sale; and to pay any other lien or encumbrance prior to the legal operation and effect of this Mortgage unless said sale is made subject to any such taxes or other lien or encumbrance; and to pay a counsel fee of One thousand Five hundred Dollars ($1,500.00) for conducting the proceedings if without contest, but if legal services are rendered to Mortgagee in connection with any contested matter in the proceedings, then such additional counsel fees and expenses shall be allowed out of the proceeds of sale or sales as the court may deem proper; and to pay additional reasonable counsel fees, if any, incurred as a result of representing Mortgagee's interest in any proceedings on behalf of any Mortgagor before any United States Bankruptcy Court or similar State insolvency proceedings; and also to pay a commission to the auctioneer or other party making the sale equal to five percent (5%) of the gross sale price;

SECOND, to pay whatever may then remain unpaid under the Note and the interest thereon to the date of payment, whether the same shall be due or not, it being agreed that the Note shall, upon such sale being made before the maturity of the Note, be and become immediately due and payable at the election of Mortgagee and to pay all of the Obligations secured hereby;

THIRD, to pay the remainder of said proceeds, if any, less the expense, if any, of obtaining possession, to Mortgagor or other party lawfully entitled to receive the same, upon the delivery and surrender of possession of the Property sold and conveyed and delivery of all records, books, bank accounts, leases, agreements, security deposits of the tenants and all other material relating to the operation of the Property to the said purchaser or purchasers.

(d) Immediately upon the filing or docketing of suit preliminary to a foreclosure sale of the Property, or any part thereof under this Mortgage, there shall be and become due and owing by Mortgagor, an auctioneer's commission on the total amount of the indebtedness secured hereby equal to two and one-half percent (2 ½%), and Mortgagee shall not be required to receive the principal and interest in satisfaction of the Obligations secured hereby, but said sale may be proceeded with unless, prior to the day appointed therefor, tender is made of said principal, interest, commissions and all expenses and costs incident to such sale and all other sums that are part of the Obligations secured hereby.

(e) Mortgagee may bid and become the purchaser at any sale under this Mortgage. If Mortgagee is the purchaser at any such sale, Mortgagee may apply the outstanding indebtedness against all or any portion of the purchase price, including the deposit.

4.5     **Collection of Revenues.** In connection with the exercise by Mortgagee of the rights and remedies provided for in subsection 4.2(b) hereof:

(a) Mortgagee may notify any tenant, lessee or licensee of the Property, either in the name of the Mortgagee or Mortgagor, to make payment of revenues directly to Mortgagee or Mortgagor's agents, may advise any person of Mortgagee's interest in and to the revenues arising out of or in connection with the Property and may collect directly from such tenants, lessees and licensees all amounts due on account of such revenues;

(b) At Mortgagee's request, Mortgagor will provide written notification to any or all tenants, lessees and licensees of the property concerning Mortgagee's interest in the revenues arising out of or in connection with the Property and will request that such tenants, lessees and licensees forward payment thereof directly to Lender;

(c) Mortgagor shall hold any proceeds and collections of any of the revenues arising out of or in connection with the Property in trust for Mortgagee and shall not commingle such proceeds or collections with any other funds of Mortgagor; and

(d) Mortgagor shall deliver all such proceeds to Mortgagee immediately upon the receipt thereof by Mortgagor in the identical form received, but duly endorsed or assigned on behalf of Mortgagor to Mortgagee.

4.6     **Use and Occupation of Property.** In connection with the exercise of Mortgagee's rights under subsection 4.2(f), Mortgagee may enter upon, occupy, and use all or any part of the Property and may exclude Mortgagor from the Land and the Improvements thereon or portion thereof as may have been so entered upon, occupied, or used. Mortgagee shall not be required to remove any personal Property from the Land and the Improvements upon Mortgagee's taking possession thereof, and may render any personal Property unusable to Mortgagor. In the event Mortgagee manages the Land and the improvements thereon in accordance with subsection 4.2(f) herein, Mortgagor shall pay to Mortgagee on demand a reasonable fee for the management thereof in addition to the Obligations. Further, Mortgagee may construct such improvements on the Land or make such alterations, renovations, repairs, and replacements to the Improvements, as Mortgagee, in its sole discretion, deems proper or appropriate. The obligation of Mortgagor to pay such amounts and all expenses incurred by Mortgagee in the exercise of its rights hereunder shall be included in the Obligations and shall accrue interest at the default rate of interest stated in the Note.

4.7     **Partial Sales.** Mortgagor agrees that in case Mortgagee, in the exercise of the power of sale contained herein or in the exercise of any other rights hereunder given, elects to sell in parts or parcels, said sales may be held from time to time and that the power shall not be exhausted until all of the Property not previously sold shall have been sold, notwithstanding that the proceeds of such sales exceed, or may exceed, the Obligations.

4.8     **Assembly of Property.** Upon the occurrence of any Event of Default, Mortgagee may require Mortgagor to assemble the Property and make it available to Mortgagee, at Mortgagor's sole risk and expense, at a place or places to be designated by Mortgagee which are reasonably convenient to both Mortgagee and Mortgagor.

4.9     **Power of Attorney.** Upon the occurrence of any Event of Default, Mortgagor hereby irrevocably constitutes and appoints Mortgagee as Mortgagor's true and lawful attorney in fact to take any action with respect to the Property to preserve, protect, or realize upon Mortgagee's interest therein, each at the sole risk, cost and expense of Mortgagor, but for the sole benefit of Mortgagee. The rights and powers granted Mortgagee by the within appointment include, but are not limited to, the right and power to: (a) prosecute, defend, compromise, settle, or release any action relating to the Property; (b) endorse the name of Mortgagor in favor of Mortgagee upon any and all checks or other items constituting revenues arising out of or in connection with the Property; (c) sign and endorse the name of Mortgagor on, and to receive as secured party, any of the Property; (d) sign and file or record on behalf of Mortgagor any financing or other statement in order to perfect or protect Mortgagee's security interest; (e) enter into any contracts or agreements relative to, and to take all action deemed necessary in connection with, the construction of any improvements on the Land; (f) manage, operate, maintain or repair the Land and the improvements; and (g) exercise the rights of Mortgagor under any contracts, leases or intangible personal property. Mortgagee shall not be obligated to perform any of such acts or to exercise any of such powers, but if Mortgagee elects so to perform or exercise, Mortgagee shall not be accountable for more than it actually receives as a result of such exercise of power, and shall not be responsible to Mortgagor except for Mortgagee's willful misconduct or gross negligence. All powers conferred upon Mortgagee by this Mortgage and Security Agreement, being coupled with an interest, shall be irrevocable until terminated by a written instrument executed by a duly authorized officer of the Mortgagee.

## ARTICLE 5. MISCELLANEOUS

5.1     **Mortgagee.** The Mortgagee shall be protected in acting upon any notice, request, consent, demand, statement, note or other paper or document believed by them to be genuine and to have been signed by the party or parties purporting to sign the same. The Mortgagee shall not be liable for any error of judgment, nor for any act done or step taken or omitted, nor for any mistake of law or fact, nor for anything which they may do or refrain from doing in good faith nor generally shall a Mortgagee have any accountability hereunder except for his own individual willful default.

5.2     **Estoppel Certificates.** Mortgagor, upon request, made either personally or by mail, shall, within six (6) days in case the request is made personally, or within ten (10) days after the mailing of such request in case

the request is made by mail, certify, by a writing duly acknowledged, to Mortgagee or to any proposed assignee of the Note, the amount of principal and interest then owing on the Note and whether any offsets or defenses exist against the Obligations secured hereby. At the request of Mortgagee, such certificate shall also contain a statement that Mortgagor knows of no Event of Default nor of any other default which, after notice or lapse of time or both, would constitute an Event of Default, which has occurred and remains uncured as of the date of such certificate, or, if any such Event of Default or other default has occurred and remains uncured as of the date of such certificate, then such certificate shall contain a statement specifying the nature thereof, the time for which the same has continued and the action which Mortgagor has taken or proposes to take with respect thereto.

5.3 **Subrogation.** This Mortgage and the Mortgagee, as additional security, are hereby subrogated to the lien or liens and to the rights of the owners and holders thereof of each and every mortgage, lien or other encumbrance on the Property, or any part thereof, or any claim or demand which is paid or satisfied, in whole or in part, out of the proceeds of the Obligations secured hereby and the respective liens of said mortgages, liens and other encumbrances and claims and demands shall pass to and be held by the Mortgagee as additional security for the Obligations to Mortgagee to the same extent that they would have been preserved and would have been passed to and been held by Mortgagee had they each been duly and regularly assigned, transferred, set over and delivered to Mortgagee by separate deed of assignment, notwithstanding the fact the same may be or may have been satisfied and cancelled of record, it being the intention of the parties hereto that the same will be satisfied and cancelled of record at or about the time they are paid or satisfied out of the proceeds of the Loan.

5.4 **Notices.** Unless specifically provided otherwise in this Mortgage or by law, any notice required or permitted by or in connection with this Mortgage shall be in writing and shall be made by facsimile or by hand delivery, by overnight delivery service, or by certified mail, unrestricted delivery, return receipt requested, postage prepaid, addressed to Mortgagee or Mortgagor at the appropriate address set forth above or to such other address as may be hereafter specified by written notice by Mortgagee or Mortgagor. Notice shall be considered given as of the date of the facsimile or the hand delivery, one (1) calendar day after delivery to the overnight delivery service, or three (3) calendar days after the date of mailing, independent of the date of actual delivery or whether delivery is ever in fact made, as the case may be, provided the giver of notice can establish that notice was given as provided herein.

5.5 **Legal Construction.** This Mortgage shall be construed according to the laws of Pennsylvania (excluding Pennsylvania conflict of laws) and any court of competent jurisdiction of Pennsylvania shall have jurisdiction in any proceeding instituted to enforce this Mortgage and any objections to venue are hereby waived.

5.6 **Usury Limitations.** No provision of this Mortgage shall require the payment or permit the collection of interest or other sum in excess of the maximum permitted by applicable law, including a judicial determination. If any excess of interest or other sum in such respect is herein provided for, or shall be adjudicated to be so provided for herein, neither Mortgagor nor its successors or assigns shall be obligated to pay such interest or other sum in excess of the amount permitted by applicable law, including a judicial determination, and the right to demand the payment of any such excess shall be and hereby is waived. The provisions of this Section shall control all other provisions of this Mortgage.

5.7 **Recording.** Mortgagor covenants and agrees to promptly cause all documents required by Mortgagee to be properly recorded or filed, including this Mortgage, and to pay all fees, taxes and expenses incident thereto. Mortgagor shall hold harmless and indemnify Mortgagee against any liability incurred by reason of the imposition of any fee, tax or charge on the making and recording of this Mortgage.

5.8 **Rights of Mortgagee.**

(a) *Rights Not Limited.* The rights, powers, privileges and discretions (hereinafter collectively called the "rights") specifically granted to the Mortgagee and those specifically granted to Mortgagee under this Mortgage are not in limitation of but in addition to those to which they are entitled under any general or local law relating to and mortgages in Pennsylvania, now or hereafter existing.

(b) *Benefit to Successors and Assigns.* The rights to which Mortgagee may be entitled shall inure to the benefit of its successors and assigns.

{04519182;v3 }

13

(c) *Rights Cumulative*. All the rights of Mortgagee are cumulative and not alternative and may be enforced successively or concurrently.

5.9 **No Waiver.** Failure of Mortgagee to exercise any of their rights shall not impair any of their rights nor be deemed a waiver thereof, and no waiver of any of their rights shall be deemed to apply to any other such rights, nor shall it be effective unless in writing and signed by the party waiving the right. The acceptance by Mortgagee of any partial payment after default or an Event of Default, with or without knowledge of the default or Event of Default, shall not be a waiver of the default or Event of Default unless Mortgagee shall specifically state in writing that the acceptance waives the default or Event of Default or states further conditions which must be satisfied to constitute such a waiver. The failure of Mortgagee to exercise the option for acceleration of maturity, foreclosure, or either, following an Event of Default or to exercise any other option or privilege granted to Mortgagee hereunder in any one or more instances, shall not constitute a waiver of any such default, but such option or privilege shall remain continuously in force.

5.10 **Mutual Waiver of Jury Trial.** Mortgagor and Mortgagee (by acceptance of this Mortgage) each, on behalf of itself and its successors and assigns, WAIVES to the fullest extent permitted by law all right to TRIAL BY JURY of any and all claims between them arising under this Mortgage, the Note, the Loan Agreement, or any other Loan Documents, and any and all claims arising under common law or under any statute of any state or the United States of America, whether any such claims be now existing or hereafter arising, now known or unknown. In making this waiver Mortgagee and Mortgagor acknowledge and agree that any and all claims made by Mortgagee and all claims made against Mortgagee shall be heard by a judge of a court of proper jurisdiction, and shall not be heard by a jury. Mortgagee and Mortgagor acknowledge and agree that THIS WAIVER OF TRIAL BY JURY IS A MATERIAL ELEMENT OF THE CONSIDERATION FOR THIS TRANSACTION. Mortgagee and Mortgagor, with advice of counsel, each acknowledges that it is knowingly and voluntarily waiving a legal right by agreeing to this waiver provision.

5.11 **Waiver by Mortgagor.** Mortgagor waives, on behalf of itself and all persons now or hereafter interested in the Property, all rights under all appraisement, homestead, moratorium, valuation, redemption, exemption, stay, extension and marshalling statutes, laws or equities now or hereafter existing and agrees that no defense based on any thereof will be asserted in any action enforcing this Mortgage. Furthermore, Mortgagor hereby expressly waives the right or equity of redemption, whether arising under statute, common law, or both. Mortgagor represents and covenants that the Property forms no part of any property owned, used or claimed by Mortgagor as a business or residential homestead or as exempt from forced sale and disclaims and renounces all and every such claim thereto.

5.12 **Secondary Market Cooperation.** Mortgagor acknowledges that Mortgagee may (a) sell this Mortgage, the Note and the other Loan Documents to one or more investors as a whole loan, (b) participate the Loan to one or more investors, (c) deposit this Mortgage, the Note, the Guarantee and the other Loan Documents with a trust, which trust may sell certificates to investors evidencing an ownership interest in the trust assets or (d) otherwise sell the Loan or interest therein to investors (the transactions referred to in clauses (a) through (d) are hereinafter referred to as "**Secondary Market Transactions**"). Mortgagor shall cooperate in good faith with Mortgagee in effecting any such Secondary Market Transaction and shall cooperate in good faith to implement all requirements imposed by any rating agency involved in any Secondary Market Transaction including, without limitation, all structural or other changes to the Loan, modifications to any documents evidencing or securing the Loan, delivery of opinions of counsel acceptable to the rating agency and addressing such matters as the rating agency may require; provided, however, Mortgagor shall not be required to modify any documents evidencing or securing the Loan which would modify (i) the interest rate payable under the Note, (ii) the stated maturity of the Note, (iii) the amortization of principal of the Note, or (iv) any other material economic term of the Loan. Mortgagor shall provide such information and documents relating to Mortgagor, any guarantor of Mortgagor, the Property and any tenant of the Property as Mortgagee may reasonably request in connection with a Secondary Market Transaction. Mortgagee shall have the right to provide to prospective investors any information in its possession, including, without limitation, financial statements relating to Mortgagor, any guarantor of Mortgagor, the Property and any tenant of the Property. Mortgagor acknowledges that certain information regarding the Loan and the parties thereto and the Property may be included in a private placement memorandum, prospectus or other disclosure documents.

{04519182;v3 }

14

5.13     **Indemnification.** Mortgagee shall not be obligated to perform or discharge any obligation or duty to be performed or discharged by Mortgagor under any lease. Mortgagor shall indemnify the Mortgagee for and save them harmless from any and all liability arising from any lease or assignment of a lease as security under this Mortgage. Mortgagee shall not have any responsibility for the control, care, management or repair of the Property or be liable for any negligence in the management, operation, upkeep, repair or control of the Property resulting in loss or injury or death to any lessee or any other person or entity. The obligations and liabilities of Mortgagor under this paragraph shall survive any termination, satisfaction or assignment of this Mortgage and the exercise by Mortgagee of any of its rights or remedies hereunder including, without limitation, the acquisition of the Property by foreclosure or a conveyance in lieu of foreclosure.

5.14     **Binding Effect.** The terms and conditions agreed to by Mortgagor and the covenants of Mortgagor shall be binding upon the personal representatives, successors and assigns of Mortgagor and of each of them, but this provision does not waive any prohibition of assignment or any requirement of consent to an assignment under the other provisions of this Mortgage; any consent to an assignment shall not be consent to any further assignment, each of which must be specifically obtained in writing.

5.15     **Recitals.** The recitals of this Mortgage are incorporated herein and made a part hereof.

5.16     **Number and Gender.** Wherever used herein the singular shall include the plural and the plural the singular, and the use of any gender shall include all genders.

5.17     **Time of Essence.** Time is of the essence of the obligations of Mortgagor in this Mortgage and each and every term, covenant and condition made herein by or applicable to Mortgagor.

5.18     **Captions.** The captions of the Sections of this Mortgage are for the purpose of convenience only and are not intended to be a part of this Mortgage and shall not be deemed to modify, explain, enlarge, or restrict any of the provisions hereof.

5.19.    **Severability.** If any provision of this Mortgage or the application thereof to any person or circumstance shall be invalid, inoperative or unenforceable to any extent, the remainder of this Mortgage and the application of such provisions to other persons or circumstances shall not be affected thereby and shall be valid, operative and enforceable to the greatest extent permitted by law.

5.20.    **Execution of Counterparts.** This Mortgage may be executed in any number of counterparts and each of such counterparts shall for all purposes be deemed to be an original and all such counterparts shall together constitute but one and the same Mortgage.

5.21.    **Security Agreement.** Mortgagor has executed this instrument as a Debtor under the Uniform Commercial Code of the state in which the Property is located. This Mortgage shall constitute and be a security agreement and financing statement under the laws of such state.

5.22.    **Future Advances.** This Mortgage is given to secure not only existing Obligations, but also such future advances, whether such advances are obligatory or are to be made at the option of the Mortgagee, or otherwise, as are made within twenty (20) years from the date hereof, to the same extent as if such future advances are made on the date of the execution of this Mortgage. The total amount of Obligations that may be so secured may decrease or increase from time to time, but the total unpaid balance so secured at one time shall not exceed twice the face amount of the Note, plus interest thereon, and any disbursements made for the payment of taxes, levies or insurance on the Mortgaged Property, with interest on such disbursements at the Default Rate as hereinafter defined.

## ARTICLE 6. ADDITIONAL COVENANTS

6.1     **Leases of the Property.**

{04519182;v3 }

15

6.1.1 **Compliance with Leases.** Mortgagor shall carry out all of its agreements and covenants as landlord contained in any leases (which word when used in this Mortgage shall include, without limitation, all agreements, licenses, contracts, reservations, accounts, and permits affecting all or any part of the Property) and not permit a lien or other encumbrance superior to such leases other than this Mortgage. No lease shall include any space, or grant to any tenant any right or interest in any area outside of the limits of the Property. Upon demand of Mortgagee, Mortgagor shall furnish Mortgagee an executed copy of each lease immediately upon its execution. All future leases shall be written on the standard form accepted by Mortgagee, with only such changes as Mortgagee shall have approved in writing or on a lease agreement approved by Mortgagee.

6.1.2 **Assignment of Leases.** Mortgagor hereby grants, conveys, assigns, and transfers unto the Mortgagee, for the benefit of Mortgagee, all the right, title, interest and privileges which Mortgagor has or may hereafter have in any and all of said leases now existing or hereafter made affecting all or a part of the Property, as said leases may have been or may from time to time be hereafter modified, extended or renewed with all the rents (which word when used in this Mortgage shall include, without limitation, all income and profits) due and becoming due therefrom and including without limitation the right of Mortgagee to inspect the leased areas and books and records of tenants. Mortgagor shall, upon written request by Mortgagee, execute assignments (in any form customarily used by Mortgagee) of any present or future leases, together with the rents due and becoming due therefrom, which affect in any way all or any part of the Property. No such assignment made or required hereby shall be construed as a consent by Mortgagee to any lease or to impose on Mortgagee any obligation with respect thereto. Mortgagor shall not make any other assignment, hypothecation or pledge of any rents under any lease of part or all of the Property. Mortgagor shall not, without the prior written approval of Mortgagee, cancel any of the leases, nor terminate or accept a surrender thereof, nor reduce the payment of rent thereunder, nor modify any of said leases, nor accept any prepayment of rent other than the usual prepayment as would result from the acceptance by landlord more than fifteen (15) days before the first day of each month for the ensuing month under leases approved by Mortgagee according to the terms of such leases. The covenants and restrictions of this subsection shall be deemed covenants and restrictions running with the land.

6.1.3 **Limitation on Subordinate Lienors.** Mortgagor covenants that Mortgagee of any subordinate lien shall have no right, and shall acquire no right, to terminate or modify any lease affecting the Property whether or not such lease is subordinate to the legal operation and effect of this Mortgage.

6.1.4 **Deposit of Rents.** All payments, including security deposits, under any lease received by Mortgagor shall be deemed held by Mortgagor in trust for the payment of the Obligations secured hereby. Mortgagor shall deposit in a non-interest bearing account or accounts with Mortgagee all payments (except security deposits made under residential leases, if any) made under all leases, which sums, subject to the rights of the tenants therein, may be used by Mortgagor in the ordinary course of Mortgagor's business to the extent permitted by law, until one or more of the Events of Default shall occur, but not thereafter.

6.1.5 **Assignment of Bankruptcy Awards.** Mortgagor hereby assigns to the Mortgagee any award made hereafter to it in any court procedure involving any of the tenants in any bankruptcy, insolvency or reorganization proceeding in any state or federal court and any and all payments by any tenant in lieu of rent.

6.1.6 **Limitation of Liability under Leases.** The Mortgagee shall not be obligated to perform or discharge any obligation or duty to be performed or discharged by Mortgagor under any lease; and Mortgagor hereby agrees to indemnify the Mortgagee for and to save them harmless from, any and all liability arising from any lease, or this assignment thereof and this assignment shall not place the responsibility for the control, care, management or repair of the Property upon the Mortgagee, nor make said Mortgagee liable for any negligence in the management, operation, upkeep, repair or control of the Property resulting in loss or injury or death to any tenant, agent, guest, or stranger.

6.1.7 **Security Deposits.** Mortgagor shall deposit in an account or accounts with Mortgagee or its designee, under the depository's standard program for such accounts, all security deposits made under residential leases which sums, subject to the rights of the tenants therein, may be used by Mortgagor in the ordinary course of Mortgagor's business to the extent permitted by law, until one or more of the Events of Default shall occur, but not thereafter. All such deposits shall be the continuing responsibility of Mortgagor, and Mortgagor shall comply with all applicable requirements of state and local law where the Property is located.

{04519182;v3 }

16

6.2     **Environmental Covenants.**

6.2.1     **No Substances Present.** Mortgagor hereby represents and warrants to Mortgagee that, after a due and diligent investigation, to the best of its knowledge, there are not now and have never been any materials or substances located on or near the Property that, under federal, state, or local law, statute, ordinance, or regulation, or administrative or court order or decree, or private agreement (collectively, the "**Environmental Laws**"), are regulated as to use, generation, collection, storage, treatment, or disposal (such materials or substances are hereinafter collectively referred to as "**Substances**"). The term "Substances" includes any materials or substances whose release or threatened release may pose a risk to human health or the environment or impairment of property values and shall also include without limitation (i) asbestos in any form, (ii) urea formaldehyde foam insulation, (iii) paint containing lead, (iv) transformers or other equipment which contains dielectric fluid containing levels of polychlorinated biphenyls of 50 parts per million or more, and (v) petroleum in any form. Mortgagor further represents and warrants to Mortgagee that the Property is not now being used nor has it ever been used in the past for any activities involving the use, generation, collection, storage, treatment, or disposal of any Substances. Mortgagor will not place or permit to be placed any Substances on or near the Property except for those Substances that are typically used in the operation of Mortgagor's business provided the same are in appropriately small quantities and are stored, used, and disposed of properly; or Substances that are approved in writing by Mortgagee.

6.2.2     **Acting Upon Presence of Substances.** Mortgagor hereby covenants and agrees that, if at any time (i) Substances are spilled, emitted, disposed, or leaked in any amount; or (ii) it is determined that there are Substances located on, in, or under the Property other than those of which Mortgagee has approved in writing or which are permitted to be used on the Property without Mortgagee's written approval pursuant to subsection 6.2.1 of this Section, Mortgagor shall immediately notify Mortgagee and any authorities required by law to be notified, and shall, within thirty (30) days thereafter or sooner if required by Mortgagee or any governmental authority, take or cause to be taken, at Mortgagor's sole expense, such action as may be required by Mortgagee or any governmental authority. If Mortgagor shall fail to take such action, Mortgagee may make advances or payments towards performance or satisfaction of the same but shall be under no obligation so to do; and all sums so advanced or paid, including all sums advanced or paid in connection with any investigation or judicial or administrative proceeding relating thereto, including, without limitation, reasonable attorneys' fees, expert fees, fines, or other penalty payments, shall be at once repayable by Mortgagor and shall bear interest at the Default Rate, from the date advanced or paid by Mortgagee until the date paid by Mortgagor to Mortgagee, and all sums so advanced or paid, with interest as aforesaid, shall become a part of the Obligations secured hereby.

6.2.3     **Environmental Audits.** Mortgagor, promptly upon the written request of Mortgagee from time to time, shall provide Mortgagee, at Mortgagor's expense, from time to time with an environmental site assessment or environmental audit report, or an update of such an assessment or report, all in scope, form, and content satisfactory to Mortgagee.

6.2.4     **Environmental Notices.** Mortgagor shall furnish to Mortgagee duplicate copies of all correspondence, notices, or reports it receives from any federal, state, or local agency or any other person regarding environmental matters or Substances at or near the Property, immediately upon Mortgagor's receipt thereof.

6.2.5     **Condition of Property.** Mortgagor hereby represents and warrants that there are no wells or septic tanks on the Property serving any other property; no wells or septic tanks on other property serving the Property; no burial grounds, archeological sites, or habitats of endangered or threatened species on the Property; and that no part of the Property is subject to tidal waters; has been designated as wetlands by any federal, state, or local law or governmental agency; or is located in a special flood hazard area.

6.2.6     **Environmental Indemnity.**

6.2.6.1     Mortgagor shall at all times indemnify and hold harmless Mortgagee against and from any and all claims, suits, actions, debts, damages, costs, losses, obligations, judgments, charges, and expenses, of any nature whatsoever suffered or incurred by Mortgagee, whether as beneficiary of this Mortgage, as mortgagee in possession, or as successor-in-interest to Mortgagor by foreclosure deed or deed in lieu of foreclosure, under or

on account of the Environmental Laws or any similar laws or regulations, including the assertion of any lien thereunder, with respect to:

(a) any discharge of Substances, the threat of a discharge of any Substances, or the presence of any Substances affecting the Property whether or not the same originates or emanates from the Property or any contiguous real estate including any loss of value of the Property as a result of any of the foregoing;

(b) any costs of removal or remedial action incurred by the United States Government or any costs incurred by any other person or damages from injury to, destruction of, or loss of natural resources, including reasonable costs of assessing such injury, destruction or loss incurred pursuant to any Environmental Laws;

(c) liability for personal injury or property damage arising under any statutory or common law tort theory, including, without limitation, damages assessed for the maintenance of a public or private nuisance or for the carrying on of an abnormally dangerous activity at or near the Property; and/or

(d) any other environmental matter affecting the Property within the jurisdiction of the Environmental Protection Agency, any other federal agency, or any state or local environmental agency.

Mortgagor's obligations under this Agreement shall arise upon the discovery of the presence of any Substance, whether or not the Environmental Protection Agency, any other federal agency or any state or local environmental agency has taken or threatened any action in connection with the presence of any Substances.

**6.3   CONFESSION OF JUDGMENT.** THE FOLLOWING SECTION SETS FORTH WARRANTS OF ATTORNEY FOR ANY ATTORNEY TO CONFESS JUDGMENTS AGAINST MORTGAGOR. IN GRANTING THESE WARRANTS OF ATTORNEY TO CONFESS JUDGMENTS AGAINST MORTGAGOR, MORTGAGOR HEREBY KNOWINGLY, INTENTIONALLY, VOLUNTARILY, AND UNCONDITIONALLY WAIVES ANY AND ALL RIGHTS MORTGAGOR MAY HAVE TO PRIOR NOTICE AND AN OPPORTUNITY FOR HEARING UNDER THE RESPECTIVE CONSTITUTIONS AND LAWS OF THE COMMONWEALTH OF PENNSYLVANIA AND THE UNITED STATES OF AMERICA.

FOR THE PURPOSE OF OBTAINING POSSESSION OF THE MORTGAGED PROPERTY UPON THE OCCURRENCE OF AN EVENT OF DEFAULT, MORTGAGOR HEREBY AUTHORIZES AND EMPOWERS ANY ATTORNEY OF ANY COURT OF RECORD OF THE COMMONWEALTH OF PENNSYLVANIA OR ELSEWHERE, AS ATTORNEY FOR MORTGAGOR AND ALL PERSONS CLAIMING UNDER OR THROUGH MORTGAGOR, TO BY COMPLAINT OR OTHERWISE, TO APPEAR FOR AND ENTER AND CONFESS JUDGMENT IN FAVOR OF LENDER AND AGAINST MORTGAGOR, AND AGAINST ALL PERSONS CLAIMING UNDER OR THROUGH MORTGAGOR, FOR RECOVERY BY LENDER OF POSSESSION OF THE MORTGAGED PROPERTY, FOR WHICH THIS MORTGAGE, OR A COPY HEREOF VERIFIED BY AFFIDAVIT, SHALL BE A SUFFICIENT WARRANT; WHEREUPON, IF LENDER SO DESIRES, A WRIT OF POSSESSION MAY IMMEDIATELY ISSUE FOR POSSESSION OF THE MORTGAGED PROPERTY, WITHOUT ANY WRIT OR PROCEEDING WHATSOEVER AND WITHOUT ANY STAY OF EXECUTION. IF FOR ANY REASON AFTER SUCH ACTION HAS BEEN COMMENCED IT SHALL BE DISCONTINUED, OR POSSESSION OF THE MORTGAGED PROPERTY SHALL REMAIN IN OR BE RESTORED TO MORTGAGOR, LENDER SHALL HAVE THE RIGHT IN CONNECTION WITH THE SAME DEFAULT OR ANY SUBSEQUENT DEFAULT TO BRING ONE OR MORE FURTHER ACTIONS OR ENTER AND CONFESS JUDGMENT ONE OR MORE TIMES AS HEREIN PROVIDED TO RECOVER POSSESSION OF THE MORTGAGED PROPERTY. LENDER MAY BRING AN ACTION IN EJECTMENT AND CONFESS JUDGMENT THEREIN BEFORE OR AFTER THE INSTITUTION OF PROCEEDINGS TO FORECLOSE THIS MORTGAGE OR TO ENFORCE THE NOTE, OR AFTER ENTRY OF JUDGMENT IN ANY PROCEEDINGS TO FORECLOSE THIS MORTGAGE OR ON THE NOTE, OR AFTER A

SHERIFF'S SALE OF THE MORTGAGED PROPERTY IN WHICH LENDER IS THE SUCCESSFUL BIDDER.

MORTGAGOR ACKNOWLEDGES THAT MORTGAGOR HAS HAD THE ASSISTANCE OF LEGAL COUNSEL IN THE REVIEW AND EXECUTION OF THIS MORTGAGE AND FURTHER ACKNOWLEDGES THAT THE MEANING AND EFFECT OF THE FOREGOING PROVISIONS CONCERNING CONFESSION OF JUDGMENT HAVE BEEN FULLY EXPLAINED TO MORTGAGOR BY SUCH COUNSEL.

## ARTICLE 7. U.S. SMALL BUSINESS ADMINISTRATION PROVISION

7.      The Loan secured by this lien was made under a United States Small Business Administration (SBA) nationwide program which uses tax dollars to assist small business owners. If the United States is seeking to enforce this document, then under SBA regulations:

a)      When SBA is the holder of the Note, this document and all documents evidencing or securing this Loan will be construed in accordance with federal law.

b)      Lender or SBA may use local or state procedures for purposes such as filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using these procedures, SBA does not waive any federal immunity from local or state control, penalty, tax or liability. No Borrower or Guarantor may claim or assert against SBA any local or state law to deny any obligation of Borrower, or defeat any claim of SBA with respect to this Loan.

c)      Any clause in this document requiring arbitration is not enforceable when SBA is the holder of the Note secured by this instrument.

[SIGNATURE AND ACKNOWLEDGEMENT PAGE TO FOLLOW]

IN WITNESS WHEREOF, Mortgagor has caused this Mortgage to be duly executed on its behalf and its seal to be hereunto affixed as of the date first above written.

_____
Brian D. Umholtz, Individually

_____
Jacqueline L. Miller, Individually

I, _Claire Forbush_____, certify that the precise mailing address of the within named Mortgagee is 14 North Main Street, Souderton, PA 18964.

_____
**Agent of Mortgagee**

State of ___Pennsylvania___

County of ___York___

On this, the _21st_ day of _December_____, 2023, before me, the undersigned officer, personally appeared **Brian D. Umholtz** and **Jacqueline L. Miller**, known to me (or satisfactorily proven) to be the persons whose names are subscribed to the within instrument, and acknowledged that they executed the same for the purposes therein contained.

In witness whereof, I hereunto set my hand and official seal.

_____
Notary Public

Commonwealth of Pennsylvania - Notary Seal
Diane R. Scott, Notary Public
York County
My commission expires January 26, 2027
Commission number 1196243
Member, Pennsylvania Association of Notaries

{04519182;v3 }

[SIGNATURE PAGE TO MORTGAGE]

## EXHIBIT A

### PROPERTY DESCRIPTION

20 Sharpshin Lane, York, PA 17406
Parcel Number: 35-000-JK-0151.B0-00000

**ALL** that certain lot or tract of land located in <u>Lower Windsor Township</u>, County of York, Commonwealth of Pennsylvania, known as Lot No. 3 as shown on a Plan dated October 15, 1977, bounded and described as follows, to wit:

**BEGINNING** at a point on the east side of a fifty (50) foot right-of-way now or formerly of Janelle Deitz; thence along Lot No. 2, South sixty-eight (68) degrees forty-five (45) minutes twelve (12) seconds East (erroneously referred to as West in prior deed), one hundred ninety-seven and seventy one-hundredths (197.70) feet to lands now or formerly of Ruth A. May; thence along said lands, South nineteen (19) degrees twenty-eight (28) minutes twenty (20) seconds West, one hundred eighty-three (183.00) feet to a point at lands now or formerly of Ruth A. May; thence along said lands, North sixty-eight (68) degrees forty-three (43) minutes sixteen (16) seconds West, two hundred twelve and seven one-hundredths (212.07) feet to a point at a fifty (50) foot right-of-way; thence along said right-of-way, North twenty-three (23) degrees fifty-eight (58) minutes twenty-seven (27) seconds East, one hundred eighty-three (183.00) feet to a point and place of BEGINNING.

**KNOWN** and numbered as 20 Sharpshin Lane, York, Pennsylvania 17402.

**UNDER AND SUBJECT** to any and all covenants, conditions, restrictions, rights-of-way, easements and agreements of record.

**IT BEING** the same premises which Carla J. Stough, single woman, by deed dated September 30, 1997, and recorded October 2, 1997, in the Office of the Recorder of Deeds in and for York County, Pennsylvania, in Record Book 1303, Page 2070, granted and conveyed unto Thomas G. Cunningham and Jane E. Cunningham, husband and wife, the Grantors herein.

## EXHIBIT B

### PERMITTED ENCUMBRANCES

Superior Mortgage in the original principal amount of $105,000.00 in favor of First National Bank dated August 05, 2011, and recorded August 09, 2011, in Book 2137 and Page 1726.

# EXHIBIT "D"



*YORK COUNTY RECORDER OF DEEDS*
*28 EAST MARKET STREET*
*YORK, PA 17401*

*Laura Shue - Recorder*
*Tina M. Channell - Deputy*

Instrument Number - 2023050243
Recorded On 12/28/2023 At 8:27:16 AM
* **Instrument Type - MORTGAGE**
Invoice Number - 1565064
* Grantor - MILLER, JACQUELINE L
* Grantee - UNIVEST BANK AND TRUST CO
User - JLC
* Customer - MPL LAW FIRM, LLP

Book - 2810   Starting Page - 5356
* Total Pages - 23

* Received By:  ERECORD

* **FEES**

| | |
|---|---|
| STATE WRIT TAX | $0.50 |
| JCS/ACCESS TO JUSTICE | $40.25 |
| RECORDING FEES | $49.00 |
| AFFORDABLE HOUSING | $11.50 |
| PIN NUMBER FEES | $10.00 |
| BLIGHT DEMOLITION FUND | $15.00 |
| COUNTY ARCHIVES FEE | $2.00 |
| ROD ARCHIVES FEE | $3.00 |
| TOTAL PAID | $131.25 |

| York County UPI Certification |
|---|
| On December 28, 2023 By JV |

PARCEL IDENTIFICATION NUMBER
530003400820000000
Total Parcels: 1

I Certify This Document To Be
Recorded In York County, Pa.

*Recorder of Deeds*

*THIS IS A CERTIFICATION PAGE*

# PLEASE DO NOT DETACH

*THIS PAGE IS NOW PART OF THIS LEGAL DOCUMENT*

* - Information denoted by an asterisk may change during the verification process and may not be reflected on this page.

Prepared by and return to:
Demetri A. Braynin, Esquire
Starfield & Smith, P.C.
1300 Virginia Drive, Suite 325
Fort Washington, PA 19034

Parcel Number: 53-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.00-00000
**725 Thomas Armor Drive / Windsor Township**

## MORTGAGE

**NOTICE: THIS DOCUMENT SECURES A VARIABLE INTEREST RATE NOTE AND CONTAINS PROVISIONS FOR INCREASES UNDER CERTAIN CIRCUMSTANCES IN THE PRINCIPAL BALANCE OF THE INDEBTEDNESS SECURED HEREBY**

THIS MORTGAGE is made on December 21, 2023, by and between **Brian D. Umholtz and Jacqueline L. Miller, as Joint Tenants, and not as tenants in common**, with an address of 4839 Deep Creek Terr, Parrish, FL 34219 (the "Mortgagor"), and Univest Bank and Trust Co., with an address of 14 North Main Street, Souderton, PA 18964 (the "Mortgagee").

### RECITALS

Mortgagee, has agreed, pursuant to a Loan Agreement of even date herewith (the "**Loan Agreement**"), and subject to the terms set forth therein, to make a loan to UmMiller 1295, LLC, and UMK SLI, LLC (the "**Borrower**") in an aggregate amount of **Eight Hundred Thirty Thousand Dollars and No Cents ($830,000.00)** (the "**Loan**") which is being guaranteed by Mortgagor (the "**Guarantee**"), the Loan Agreement and Guarantee constituting the consideration for this Mortgage.

Borrower has duly executed a promissory note of even date herewith (the "**Note**") to evidence the terms of repayment of the Loan with interest at the rate or rates established from time to time in accordance with the terms set forth therein, which Note has been delivered by Borrower to the Mortgagee (the Mortgagee and any assignee or other lawful owner of the Note being hereinafter sometimes called "**Holder**"). Mortgagor has duly executed the Guarantee to support the obligations of the Borrower to repay the Loan. All references herein to the Note and the obligations arising thereunder shall be deemed to include the Guarantee and all obligations arising under the Guarantee.

All things necessary to make the Guarantee the valid, binding and legal obligation of Mortgagor, to make the Note the valid, binding and legal obligation of Borrower, and to make this Mortgage a valid, binding and legal instrument for the security of the Note in accordance with its terms, have been duly performed, and the execution and delivery of the Note by Borrower and the Guarantee and this Mortgage by Mortgagor have been in all respects

{04519182;v3 }

1

duly authorized.

It has been agreed that the repayment of the Loan with interest, according to the terms of the Note and any alterations, modifications, substitutions, extensions or renewals thereof, as well as the performance of the other covenants, terms and conditions herein, should be secured by the execution of this Mortgage, which also shall secure payment by Mortgagor of all costs and expenses incurred in respect to the Loan, including reasonable attorney's fees as is hereinafter provided.

The entire unpaid balance of principal and interest, if not sooner paid, shall be due and payable Fifteen (15) years from the date hereof (the "Maturity Date"). Notwithstanding any other provision of this Mortgage, in no event shall this Mortgage secure more than Eight Hundred Thirty Thousand Dollars and No Cents ($830,000.00), plus interest; provided, however, in no event shall Mortgagee have any obligation whatsoever to advance an amount in excess of the principal amount of the Note.

This Mortgage shall secure not only existing indebtedness, but also such future advances, whether such advances are obligatory or to be made at the option of Mortgagee, or otherwise, as are made prior to the Maturity Date, to the same extent as if such future advances were made on the date of the execution of this Mortgage, but such secured indebtedness shall not exceed at any time the Loan, plus interest thereon, and any disbursements made for the payment of taxes, levies or insurance, together with interest on such disbursements. Any such future advances, whether obligatory or to be made at the option of the Mortgagee, or otherwise, may be made either prior to or after the due date of the Note or any other debts, obligations and liabilities secured by this Mortgage. This Mortgage is given for the specific purpose of securing any and all indebtedness of Mortgagor to Mortgagee (but in no event shall the secured indebtedness exceed at any time the maximum principal amount set forth in this paragraph) in whatever manner this indebtedness may be evidenced or represented, until this Mortgage is satisfied of record. All covenants and agreements contained in this Mortgage shall be applicable to all further advances made by Mortgagee to Mortgagor under this future advance clause.

NOW, THEREFORE, WITNESSETH: in consideration of the premises and of other good and valuable considerations, the receipt of which is hereby acknowledged, Mortgagor mortgages, grants, assigns, conveys and transfers unto the Mortgagee, its successor or successors and assigns, in fee simple, WITH MORTGAGE COVENANTS, all that land situate in **York County, Pennsylvania, being commonly known as 725 Thomas Armor Drive, Windsor, Parcel Number: 53-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.00-00000 and more particularly described in Exhibit A attached hereto and made a part hereof** (the "Land") and the buildings, structures, fixtures, additions, enlargements, extensions, modifications, repair, replacements and improvements now or hereafter located thereon (hereinafter sometimes called the "**Improvements**").

TOGETHER with all the walks, fences, shrubbery, driveways, fixtures, equipment, machinery, apparatus, fittings, building materials and other articles of personal property of every kind and nature whatsoever, now or hereafter ordered for eventual delivery to the Land (whether or not delivered thereto), and all such as are now or hereafter located in or upon any interest or estate in the Land or any part thereof and used or usable in connection with any present or future operation of the Land now owned or hereafter acquired by Mortgagor, including, without limiting the generality of the foregoing, all heating, lighting, laundry, clothes washing, clothes drying, incinerating and power equipment, engines, pipes, tanks, motors, conduits, switchboards, plumbing, lifting, cleaning, fire-prevention, fire-extinguishing, refrigerating, ventilating, and communications apparatus, television sets, radio systems, recording systems, computer equipment, air-cooling and air-conditioning apparatus, elevators, escalators, shades, awnings, draperies, curtains, fans, furniture, furnishings, carpeting, linoleum and other floor coverings, screens, storm doors and windows, stoves, gas and electric ranges, refrigerators, garbage disposals, sump pumps, dishwashers, washers, dryers, attached cabinets, partitions, ducts and compressors, landscaping, swimming pools, lawn and garden equipment, security systems and including all equipment installed or to be installed or used or usable in the operation of the building or buildings or appurtenant facilities erected or to be erected in or upon the Land; it being understood that all of the aforesaid shall be deemed to be fixtures and part of the Land, but whether or not of the nature of fixtures they shall be deemed and shall constitute part of the security for the Obligations herein mentioned and shall be covered by this Mortgage excluding, however, only personal property owned by any tenant actually occupying all or part of the premises. Disposition of any of the aforesaid or of any interest therein is prohibited; however, if any disposition is made in violation hereof, the Mortgagee shall have a security interest in the proceeds therefrom to the fullest extent permitted by the laws of Pennsylvania; and

{04519182;v3 }

TOGETHER with all and singular the rights, alleys, ways, waters, easements, tenements, privileges, advantages, accessions, hereditaments and appurtenances belonging or in any way appertaining to the Land and other property described herein, and the reversions and remainders, earnings, revenues, rents, issues and profits thereof and including any right, title, interest or estate hereafter acquired by Mortgagor in the Land and other property described herein; and

TOGETHER with all the right, title and interest (but not the obligations) of Mortgagor, present and future, in and to all present and future accounts, contract rights (including all fees and other obligations set forth in the Mortgagee's commitment to make the Loan), general intangibles, chattel paper, documents and instruments including but not limited to licenses, construction contracts, service contracts, utility contracts, options, permits, public works agreements, bonds, deposits and payments thereunder, relating or appertaining to the Land and other property described herein and its development, occupancy and use; and

TOGETHER with any right to payment  or for services rendered, whether or not yet earned by performance, arising from the operation of the improvements or any other facility on the Land, including, without limitation, (1) all accounts arising from the operation of the improvements and all proceeds thereof (whether cash or non-cash, movable or immovable, tangible or intangible) received upon the sale, exchange, transfer, collection or other disposition or substitution thereof, and (2) all rights to payment from any consumer credit/charge card organization or entity, including, without limitation, payments arising from the use of the American Express Card, Visa Card, Carte Blanche Card, MasterCard, Diner's Club, or any other credit card, including those now existing or hereinafter created or any substitution therefor and all proceeds thereof (whether cash or non-cash, movable or immovable, tangible or intangible) received upon the sale, exchange, transfer, collection or other disposition or substitution thereof; and

TOGETHER with all of the rents, royalties, revenues, income, proceeds, profits and other benefits paid or payable by parties to the leases for using, leasing, licensing, possessing, occupying, operating from, residing in, selling or otherwise enjoying the Land, the Improvements, and other property securing the Obligations, or any portion thereof.  As used in this Mortgage, the word "**leases**" includes any and all leases, subleases, licenses, concessions, reservations, accounts, permits, contracts, and other agreements (oral or written, now or hereafter in effect) which grant a possessory interest or right of occupancy in and to, or the right to use, or affect all or part of the Land, the improvements, and other property securing the Obligations, or any portion thereof; and

TOGETHER with all proceeds of and any unearned premiums on any insurance policies covering the Property (hereinafter defined), including, without limitation, the right to receive and apply the proceeds of any insurance, judgments, or settlements made in lieu thereof, for damage to the Property or any part thereof; and

TOGETHER with all proceeds derived from any taking by condemnation or eminent domain proceedings or transfer in place or in anticipation thereof of all or any part of the property described in these granting clauses;

TO HAVE AND TO HOLD the Land with Improvements thereupon and all the rights, easements, profits and appurtenances and other property described above (all of which is hereinafter sometimes called the "**Property**") belonging unto and to the use of the Mortgagee, and its successor or successors and assigns, in fee simple forever;

PROVIDED, HOWEVER, that the Property shall not include personal property, exclusive of fixtures ("**Personal Property**"), and any and all references in this Mortgage which purport to grant a security interest in Personal Property owned by the Mortgagor, and located in or on the Property, are hereby struck from this Mortgage and the Mortgagee hereby disclaims any such security interest, whether now or hereafter acquired.

BUT for and upon the uses, intents and purposes hereinafter mentioned, that is to say for the benefit and security of Mortgagee and for the enforcement of the payment of the Loan, the Note and all other loans, advances, hedging instruments, debts, liabilities, obligations, covenants and duties owing by the Borrower and/or Mortgagor to the Mortgagee (and its successors and/or assigns) of any kind or nature, present or future (including any interest accruing thereon after maturity, or after the filing of any petition in bankruptcy, or the commencement of any insolvency, reorganization or like proceeding relating to the Borrower or Mortgagor, whether or not a claim for post-filing or post-petition interest is allowed in such proceeding), whether direct or indirect (including those

{04519182;v3 }

3

acquired by assignment or participation), absolute or contingent, joint or several, due or to become due, now existing or hereafter arising, express or implied, under any documents evidencing or executed in connection with any of the foregoing; and any amendments, extensions, substitutions, renewals, replacements and/or increases of or to any of the foregoing, and all costs and expenses of the Mortgagee incurred in the documentation, negotiation, modification, enforcement, collection and otherwise in connection with any of the foregoing, including reasonable attorneys' fees and expenses (hereinafter referred to collectively as the **"Obligations"**). Unless expressly provided to the contrary in documentation for any other loan or loans, it is the express intent of the Mortgagee, the Borrower and the Mortgagor that all Obligations, including those included in, arising out of or related to the Loan, be cross-collateralized and cross-defaulted, such that collateral securing any of the Obligations shall secure repayment of all Obligations and a default under any Obligation shall be a default under all Obligations;

SUBJECT, HOWEVER, to the liens and rights of the holders of the contracts and instruments secured by any instruments that may be described in Exhibit B to this Mortgage (the "**Permitted Encumbrances**");

PROVIDED, HOWEVER, that if Mortgagor shall pay or cause to be paid to Mortgagee all sums secured hereby in the manner stipulated in the Note, the Loan Agreement and this Mortgage, then and in such case, the estate, right, title and interest of the Mortgagee in the Property shall cease, determine and become void, and upon proof being given to the satisfaction of the Mortgagee that the Note has been paid or satisfied, in accordance with its terms and upon payment of all fees, costs, charges, expenses and liabilities chargeable or incurred or to be incurred by the Mortgagee and of any other sums as in this Mortgage provided, the Mortgagee shall at the expense of Mortgagor, release and discharge this Mortgage of record, and shall transfer and deliver up to Mortgagor any property at the time subject to this Mortgage which may be then in their possession, provided the Mortgagee hereunder shall be entitled to a reasonable fee for the release and reconveyance of the Property or any partial release and reconveyance;

AND THIS MORTGAGE FURTHER WITNESSETH, that Mortgagor (jointly and severally if more than one) has covenanted and agreed and does hereby covenant and agree with the Mortgagee as follows:

## ARTICLE 1. DEFINITIONS

1.1     **Definitions.** All capitalized terms used herein and not otherwise defined shall have the respective meanings set forth or referred to in the Loan Agreement.

## ARTICLE 2. COVENANTS AND AGREEMENTS OF MORTGAGOR

2.1     **Incorporation of Covenants, Conditions and Agreements.** All the covenants, conditions and agreements contained in the Loan Agreement, the Note, and the other Loan Documents are hereby made a part of this Mortgage to the same extent and with the same force as if fully set forth herein.

2.2     **Title to the Property.** Mortgagor covenants that at the time of the execution and delivery of this Mortgage it has good title to all of the property described in the granting clauses of this Mortgage as being presently granted, assigned, conveyed and transferred hereunder, free and clear of all liens and encumbrances except for the Permitted Encumbrances; Mortgagor hereby does and will forever warrant generally and defend the title to the Property, and every part thereof, whether now owned or hereafter acquired, unto the Mortgagee and its successor or successors in the trust and assigns, against all claims and demands by any person or entity whatsoever; Mortgagor covenants that Mortgagor shall comply with all the terms, covenants and conditions of all agreements and instruments, recorded and unrecorded, affecting the Property; Mortgagor covenants that it has good right and lawful authority to mortgage, give, grant, pledge, assign and convey the Property in the manner and form herein provided.

2.3     **Further Assurances.** At any and all times Mortgagor shall furnish and record all and every such further assurances as may be requisite or as the Mortgagee shall reasonably require for the better assuring and confirming unto the Mortgagee the estate and property hereby granted, assigned, conveyed or transferred, or intended so to be whether now owned or hereafter acquired; Mortgagor shall bear all expenses, charges and taxes in connection therewith.

2.4 **Escrow for Taxes.** Subject to any limitations and consistent with any requirements set by applicable law, Lender may require Mortgagor to maintain with Lender reserves for payment of annual taxes, assessments, and insurance premiums, which reserves shall be created by an initial deposit and subsequent monthly payments, or payments at such other interval as payments under the Note may be due, of a sum estimated by Lender to be sufficient to pay the total annual taxes, assessments, and insurance premiums Lender reasonably anticipates to be paid from these reserves. The reserve funds shall be held by Lender as a general deposit from Mortgagor, which Lender may satisfy by payment of the taxes, assessments, and insurance premiums required to be paid by Mortgagor as they become due. Lender shall have the right to draw upon the reserve funds to pay such items, and Lender shall not be required to determine the validity or accuracy of any item before paying it. Nothing in the Mortgage shall be construed as requiring Lender to advance other monies for such purposes, and Lender shall not incur any liability for anything it may do or omit to do with respect to the reserve account. Subject to any limitations set by applicable law, if the reserve funds disclose a shortage or deficiency, Mortgagor shall pay such shortage or deficiency as required by Lender. All amounts in the reserve account are hereby pledged to further secure the Indebtedness, and Lender is hereby authorized to withdraw and apply such amounts on the Indebtedness upon the occurrence of an Event of Default. Lender shall not be required to pay any interest or earnings on the reserve funds unless required by law or agreed to by Lender in writing. Lender does not hold the reserve funds in trust for Mortgagor, and Lender is not Mortgagor's agent for payment of the taxes and assessments required to be paid by Mortgagor.

2.5 **Change in Tax Law.** In the event the passage after date of this Mortgage of any law changing in any way the laws for the taxation of deeds of trust or debts secured by deeds of trust, or the manner of collection of any such taxation so as to affect this Mortgage, Mortgagee may give thirty (30) days' written notice to Mortgagor requiring the payment of the Obligations secured hereby. If such notice be given, the Obligations secured hereby shall become due and payable at the expiration of said thirty (30) days; *provided, however,* that such requirement of payment shall be ineffective if Mortgagor is permitted by law to pay the whole of such tax in addition to all other payments required hereunder, without any penalty or charge thereby accruing to Mortgagee, and if Mortgagor in fact pays such tax prior to the date upon which payment is required by such notice.

2.6 **Activities on the Property.**

(a) Mortgagor shall not suffer any act to be done or any conditions to exist on the Property or any part thereof or any thing or article to be brought thereon (i) which may cause structural injury to the improvements on the Land; or (ii) which would cause the value or usefulness of the Property or any part thereof to diminish (ordinary wear and tear excepted); or (iii) which may be dangerous, unless safeguarded as required by law; or (iv) which may in fact or in law, constitute a nuisance, public or private; or (v) which may void or make voidable any insurance then in force or required by the terms of this Mortgage, the Loan Agreement to be in force.

(b) Mortgagor shall not use or occupy the Property, and shall not suffer or permit any tenant under any lease to use or occupy the Property, in any manner that would constitute a violation of any state and/or federal laws involving controlled substances, even in a jurisdiction that allows such use by state or local law or ordinance. In the event that Mortgagor becomes aware of such a violation, Mortgagor shall take all actions permitted by law to terminate the activity constituting such violation. Any violation of this Section 2.6(b) is a material breach of this Mortgage and constitutes an Event of Default under Section 3.3 hereof.

2.7 **Additional Insurance.** If required by the Mortgagee, in addition to the provisions of and to the extent not so provided by the Loan Agreement, Mortgagor shall at all times maintain during the entire term of this Mortgage the following insurance, in form and substance satisfactory to Mortgagee:

(a) *Hazard/Property Insurance.* Mortgagor shall obtain and keep in effect hazard and property insurance to protect against fire, theft, damage, and other risks (including, if required, flood) in coverage to full extent required by Mortgagee, but in no event, less than total replacement value for all casualty policies;

(b) *General Liabilty Insurance.* Mortgagor shall obtain and keep in effect insurance against liability on account of damage to persons or property in coverage to full extent required by Mortgagee;

(c) *Workers' Compensation.* During any construction, repair, restoration or replacement of improvements on the Land, Mortgagor shall cause all contractors and subcontractors (including Mortgagor if it acts as a contractor) to obtain and keep in effect workers' compensation insurance to the full extent required by applicable law and also which shall cover all employees of each contractor and subcontractor; upon demand, Mortgagor shall provide evidence satisfactory to Mortgagee that it is complying with this covenant; and

(d) *Additional Insurance.* All other insurance required by this Mortgage or by the Loan Documents.

All insurance for loss or damage shall provide that losses, if any, shall be payable to Mortgagee, as its interest may appear. Mortgagor will pay the premiums for all insurance and deliver to Mortgagee the policies of insurance or duplicates thereof, or other evidence satisfactory to Mortgagee of such insurance coverage. Each insurer shall agree, by endorsement upon the policy or policies issued by it, or by independent instrument furnished to Mortgagee, that (i) it will give Mortgagee thirty (30) days' prior written notice of the effective date of any material alteration or cancellation of such policy; and (ii) the coverage of Mortgagee shall not be terminated, reduced or affected in any manner regardless of any breach or violation by Mortgagor of any warranties, declarations or conditions of such insurance policy or policies. The proceeds of such insurance shall be applied, at Mortgagee's option, toward the replacement, restoration or repair of the Property which may be lost, stolen or destroyed or damaged or toward payment of any Obligations of Mortgagor to Mortgagee.

2.8 **Additional Advances.** If Mortgagor shall fail to perform any of the covenants or satisfy any of the conditions contained herein, Mortgagee may make advances or payments towards performance or satisfaction of the same but shall be under no obligation so to do; and all sums so advanced or paid shall be at once repayable by Mortgagor and shall bear interest at the Default Rate from the date the same shall become due and payable until the date paid, and all sums so advanced or paid, with interest as aforesaid, shall become a part of the Obligations secured hereby; but no such advance or payment shall relieve Mortgagor from any default hereunder. If Mortgagor shall fail to perform any of the covenants or satisfy any of the conditions contained herein, Mortgagee may use any funds of Mortgagor towards performance or satisfaction of the same but shall be under no obligation so to do; and no such use of funds shall relieve Mortgagor from any default hereunder.

2.9 **Condemnation Awards.** Should the grade of any street be altered or all or any part of the Property be condemned or taken through eminent domain proceedings, all or such part of any award or proceeds derived therefrom, as Mortgagee in its sole discretion may determine in writing, shall be paid to Mortgagee and applied to the payment of the Obligations secured hereby (in such manner or combination thereof, including inverse order of maturity of installments of principal, if any, as Mortgagee may, in its sole discretion, elect) and all such proceeds are hereby assigned to Mortgagee.

2.10 **Costs of Defending and Enforcing the Lien.** Mortgagor shall pay all costs, charges and expenses, including appraisals, title examinations, and reasonable attorney's fees, which Mortgagee may incur in defending or enforcing the validity or priority of the legal operation and effect of this Mortgage, or any term, covenant or condition hereof, or in collecting any sum secured hereby, or in protecting the security of Mortgagee including without limitation being a party in any condemnation, bankruptcy or administrative proceedings, or, if an Event of Default shall occur, in administering and executing the trust hereby created and performing their powers, privileges and duties hereunder. Mortgagee may make advances or payments for such purposes but all advances or payments made by Mortgagee for such purposes shall be repayable immediately by Mortgagor and shall bear interest at the Default Rate from the date the same shall become due and payable until the date paid, and any such sum or sums with interest as aforesaid shall become a part of the Obligations secured hereby; but no such advance or payment shall relieve Mortgagor from any default hereunder.

2.11 **Modification of Terms; No Novation.** Mortgagee may at any time, and from time to time, extend the time for payment of the Obligations secured hereby, or any part thereof, or interest thereon, and waive, modify or amend any of the terms, covenants or conditions in the Note, in the Guarantee, in this Mortgage or in any other Loan Document, in whole or in part, either at the request of Mortgagor or of any person having an interest in the Property, accept one or more notes in replacement or substitution of the Note, consent to the release of all or any part of the Property from the legal operation and effect of this Mortgage, take or release other security, release any

party primarily or secondarily liable on the Note or hereunder or on such other security, grant extensions, renewals or indulgences therein or herein, apply to the payment of the principal and interest and premium, if any, of the Obligations secured hereby any part or all of the proceeds obtained by sale or otherwise as provided herein, without resort or regard to other security, or resort to any one or more of the securities or remedies which Mortgagee may have and which in its absolute discretion it may pursue for the payment of all or any part of the Obligations secured hereby, in such order and in such manner as it may determine, all without in any way releasing Mortgagor or any party secondarily liable from any of the terms, covenants or conditions of the Note, the Guarantee, this Mortgage, or any other Loan Document, or relieving the unreleased Property from the legal operation and effect of this Mortgage for all amounts owing under the Note, the Loan Agreement and this Mortgage. Mortgagee and Mortgagor recognize and agree that the provisions of this Mortgage, the Note, the Guarantee, and any other Loan Document may be modified by them or their successors or assigns at any time before or after default (which modification may involve increasing the rate of interest in the Note, agreeing that other charges should be paid, or modifying any other provision in any such instruments). Mortgagee may extend the time of payment, may agree to alter the terms of payment of the Obligations, and may grant partial releases of any portion of the property included herein. No such modification by Mortgagee and Mortgagor nor any such action by Mortgagee or the Mortgagor referred to above shall be a substitution or novation of the original Obligations or instruments evidencing or securing the same, but shall be considered a possible occurrence within the original contemplation of the parties.

2.12 **Governmental Action Affecting the Property.** Mortgagor agrees that in the event of the enactment of any law or ordinance, the promulgation of any zoning or other governmental regulation, or the rendition of any judicial decree restricting or affecting the use of the Property or rezoning the area wherein the same shall be situate which Mortgagee reasonably believes adversely affects the Property, Mortgagee may, upon at least sixty (60) days written notice to Mortgagor, require payment of the Obligations secured hereby at such time as may be stipulated in such notice, and the whole of the Obligations secured hereby, shall thereupon become due and payable.

## ARTICLE 3. EVENTS OF DEFAULT

The occurrence of one or more of the following events (herein called an **"Event of Default"**) shall constitute and be an Event of Default:

3.1 **Default under Loan Documents.** The occurrence and continuance of an Event of Default under the Loan Agreement, the Note or any other Loan Document shall constitute an Event of Default hereunder. In the event Mortgagee consents to an encumbrance on the Property, a default under the terms of any document creating such an encumbrance shall be a default hereunder.

3.2 **Additional Insurance Obligations.** Mortgagor fails to promptly perform or comply with any of the terms and conditions set forth in subsection 2.7.

3.3 **Material Obligations.** Mortgagor fails to perform or observe any of its material obligations under this Mortgage.

3.4 **Judgment.** Unless adequately covered by insurance in the reasonable opinion of Mortgagee, the entry of a final judgment for the payment of money involving more than $10,000.00 against Mortgagor or any guarantor of the Loan and the failure of Mortgagor or any guarantor of the Loan to cause the same to be discharged or bonded off to the satisfaction of Mortgagee within sixty (60) days from the date the order, decree or process under which or pursuant to which such judgment was entered.

3.5 **Transfer of the Property.** If all or any part of the Property or any interest in the Property is sold, transferred, assigned, conveyed or otherwise disposed of, either outright or as security for an indebtedness, or if there is any change in the ownership of Mortgagor, without Mortgagee's prior written consent, Mortgagee may, at Mortgagee's option, declare all the Obligations secured by this Mortgage to be immediately due and payable and Mortgagee may exercise any or all of the remedies provided in Paragraph 4 hereunder.

## ARTICLE 4. REMEDIES

4.1     **Remedies-Acceleration.** If one or more of the Events of Default shall occur, Mortgagee may, at its option, declare the entire unpaid principal amount of the Note (if not already due and payable) to be due and payable immediately, and upon any such declaration the same shall become and be immediately due and payable, anything in the Note, in the Guarantee, in the Loan Agreement or in this Mortgage to the contrary notwithstanding; and in the event of any sale of all or any part of the Property, whether made under the power of sale herein granted, assent to a decree or through judicial proceedings, such unpaid principal amount shall automatically and without notice become so due and payable. If Mortgagee exercises Mortgagee's option to declare the entire unpaid principal amount of the Note to be due and payable, Mortgagor covenants to pay immediately the full amount of the Obligations secured hereby even though foreclosure or other court proceedings to collect the Obligations have not been commenced. Acceleration of maturity, once declared by Mortgagee, may at the option of Mortgagee, be rescinded by written acknowledgment to that effect by Mortgagee, but the tender and acceptance of partial payments alone shall not rescind or affect in any way such acceleration of maturity.

4.2     **Power of Sale; Assent to Decree and Other Remedies.** If one or more of the Events of Default shall occur and whether or not Mortgagee shall have accelerated the maturity of the Obligations pursuant to Section 4.1 hereof, Mortgagee, at its option, may:

(a)     proceed by suit or suits at law or in equity or by any other appropriate remedy to protect and enforce the rights of Mortgagee whether for the specific performance of any covenant or agreement contained herein, or in aid of the execution of any power herein granted, or to enforce payment of the Note, of the Guarantee, or to foreclose this Mortgage, or to sell the Property under the judgment or decree of a court or courts of competent jurisdiction, or otherwise. Mortgagor, in accordance with any general or local laws or rules or regulations of Pennsylvania relating to mortgages including any amendments thereof or supplements thereto which do not materially change or impair the remedy, does hereby declare and assent to the passage of a decree to sell the Property by the equity court having jurisdiction for the sale of the Property, subject to the terms of the decree of court, the same authority and power to sell on the terms and conditions herein set forth. This assent to decree shall not be exhausted in the event the proceeding is dismissed before the Obligations secured hereby is paid in full;

(b)     either with or without entering upon or taking possession of the Property, demand, collect and receive any or all revenues arising out of or in connection with the Property, including, without limitation, all rents;

(c)     take possession and assemble such items of the Property as may be designated by Mortgagee and make them available to the Mortgagee at a place reasonably convenient to both parties to be designated by Mortgagee or the Mortgagee. Upon a default under this Mortgage, Mortgagee shall have the right to take possession of such items of the Property as Mortgagee may elect. In taking possession Mortgagee may proceed without judicial process if this can be done without breach of the peace. Mortgagee shall have the further right to remove such items of the Property as it may choose to any location or locations selected by Mortgagee, and Mortgagor shall pay the costs of such removal and for the storage and protection of such items immediately upon demand therefor. If Mortgagee elects to proceed under the Pennsylvania Uniform Commercial Code to dispose of some of the Property, the Mortgagee shall give Mortgagor notice by certified mail, postage prepaid, return receipt requested, of the time and place of any public sale of any of such property or of the time after which any private sale or other intended disposition thereof is to be made by sending notice to Mortgagor at least five (5) days before the time of the sale or other disposition, which provisions for notice Mortgagor and the Mortgagee agree are reasonable; *provided, however,* that nothing herein shall preclude Mortgagee from proceeding as to all the Property in accordance with the rights and remedies of Mortgagee in respect of the real property, as provided in the Pennsylvania Uniform Commercial Code, as amended from time to time;

(d)     either with or without taking possession of the property, sell, lease or otherwise dispose of the Property in its then condition or following such preparation as Mortgagee deems advisable;

{04519182;v3 }

8

(e) either with or without entering upon or taking possession of the Property and without assuming any obligations of Mortgagor, thereunder, exercise the rights of Mortgagor under, use or benefit from, any of the contracts, leases or intangible property;

(f) may enter and take possession of the Property and may exclude Mortgagor, its agents and servants, wholly therefrom, and having and holding the same, may use, operate, manage and control the Property or any part thereof, and upon every such entry Mortgagee, at the expense of Mortgagor and of the Property, from time to time may make all necessary or proper repairs, renewals, replacements and useful or required alterations, additions, betterments and improvements to and upon the Property as to it may seem judicious and pay all costs and expenses of so taking, holding and managing the same, including reasonable compensation to its employees and other agents (including, without limitation, attorney's fees and management and rental commissions) and any taxes, assessments and other charges prior to the legal operation and effect of this Mortgage which Mortgagee may deem it wise or desirable to pay, and in such case Mortgagee shall have the right to manage the Property and to carry on the business and exercise all rights and powers of Mortgagor, either in the name of Mortgagor, or otherwise, as Mortgagee shall deem advisable; and Mortgagee shall be entitled to collect and receive all rents thereof and therefrom. The taking of possession and collection of rents by Mortgagee shall not be construed to be an affirmation of any lease or acceptance of attornment with respect to any lease of all or any portion of the Property. After deducting the expenses of operating the Property and of conducting the business thereof, and of all repairs, maintenance, renewals, replacements, alterations, additions, betterments, improvements and all payments which it may be required or may elect to make for taxes or other proper charges on the Property, or any part thereof, as well as just and reasonable compensation for all its employees and other agents (including, without limitation, attorney's fees and management and rental commissions) engaged and employed, the moneys arising as aforesaid shall be applied to the Obligations secured hereby. Whenever all that is due upon the principal of and interest on the Note and under any of the terms of this Mortgage shall have been paid and all defaults made good, Mortgagee shall surrender possession to Mortgagor. The same right of entry, however, shall exist if any subsequent Event of Default shall occur. Mortgagee may, in person, by agent or by court-appointed receiver, enter upon, take possession of, and maintain full control of the Property in order to perform all acts necessary or appropriate to complete construction of the improvements and to maintain and operate the Property, including, but not limited to, the execution, cancellation or modification of leases, the making of repairs to the Property and the execution or termination of contracts providing for the construction, management or maintenance of the Property, all of such terms as Mortgagee, in its sole discretion, deems proper or appropriate;

(g) proceed by a suit or suits in law or in equity or by other appropriate proceeding to enforce payment of the Note and/or the Guarantee, or the performance of any term, covenant, condition or agreement of this Mortgage and Security Agreement or any of the other Loan Documents, or any other right, and to pursue any other remedy available to it, all as Mortgagee shall determine most effectual for such purposes;

(h) institute and maintain such suits and proceedings as Mortgagee may deem expedient to prevent any impairment of the Property by any acts which may be unlawful or in violation of this Mortgage and Security Agreement, to preserve or protect its interest in the Property and the revenues arising out of or in connection with the Property, and to restrain the enforcement of or compliance with any legislation or other governmental enactment, rule or order that would impair the security hereunder or be prejudicial to the interest of Mortgagee;

(i) apply all or any portion of the Property, or the proceeds thereof, towards (but not necessarily in complete satisfaction of) the Obligations;

(j) foreclose any and all rights or Mortgagor in and to the Property, whether by sale, entry or in any other manner provided for hereunder or under the laws of Pennsylvania;

(k) in the case of any receivership, insolvency, bankruptcy, reorganization, arrangement, adjustment, composition or other proceeding affecting Mortgagor or the creditors or property of Mortgagor,

Mortgagee, to the extent permitted by law, shall be entitled to file such proofs of claim and other documents as may be necessary or advisable in order to have the claims of Mortgagee allowed in such proceedings for the entire amount of the Obligations at the date of the institution of such proceedings and for any additional portion of the Obligations accruing after such date;

(l) exercise of any right or remedy of mortgagee or secured party under the laws of Pennsylvania.

4.3 **Appointment of a Receiver.** Until one or more of the Events of Default shall occur (but not thereafter), Mortgagor shall have possession of the Property and shall have the right to use and enjoy the same and to receive the rents thereof and therefrom. If one or more of the Events of Default shall occur, and without the requirement of any other showing, Mortgagee shall be entitled as a matter of right and to the extent permitted by law, without notice to Mortgagor, and without regard to the adequacy of the security, to the immediate appointment of a receiver of the Property and of the rents thereof and therefrom, in an ex parte proceeding with all such other powers as the court or courts making such appointment shall confer, and the rents thereof and therefrom are hereby assigned to Mortgagee as additional security under this Mortgage. Mortgagor shall deliver to the receiver appointed pursuant to the provisions of this Section, or to Mortgagee in the event of entry pursuant to the terms of the preceding Section, all original records, books, bank accounts, leases, agreements, security deposits of the tenants and all other materials relating to the operation of the Property.

4.4 **Foreclosure Sale.**

(a) If one or more of the Events of Default shall occur, the Mortgagee shall sell and in the case of default of any purchaser or purchasers shall resell all the Property as an entirety, or in such parcels and in such order as Mortgagee shall in writing request, or, in the absence of such request, as the Mortgagee may determine (Mortgagor hereby waiving for itself and for any person claiming by or through it application of the doctrine of marshalling of assets), at public auction at some convenient place or places in the jurisdiction in the state where the Property is situate, or in such other place or places as may be permitted by law, at such time, in such manner and upon such terms as the Mortgagee may fix and briefly specify in each notice of sale, which notice of sale shall state the time when, and the place where, the same is to be made, shall contain a brief general description of the property to be sold, and shall be sufficiently given if published as frequently and in such publication as may be required by law, and Mortgagee may cause such further public advertisement to be made as they may deem advisable, and any such sale may be adjourned by the Mortgagee by announcement at the time and place appointed for such sale or for such adjourned sale, and, without further notice or publication, such sale may be made at the time and place to which the same shall be so adjourned. If one or more leases are entered into or recorded subsequent to the recording of this Mortgage or are otherwise subordinate to this Mortgage, the Mortgagee shall sell, subject to any one or more of such tenancies that are designated and selected by Mortgagee.

(b) Upon the completion of any sale and compliance with all the terms thereof, the Mortgagee shall execute and deliver to the purchaser or purchasers a good and sufficient deed of conveyance, assignment and transfer, lawfully conveying, assigning and transferring the property sold. Payment to the Mortgagee of the entire purchase money shall be full and sufficient discharge of any purchaser or purchasers of the property, sold as aforesaid, for the purchase money; and no such purchaser, or his representatives, successors or assigns, after paying such purchase money and receiving the deed shall be bound to see to the application of such purchase money.

(c) In the case of any sale of the Property or of any part thereof, whether under the power of sale herein granted, assent to decree or through other judicial proceedings, the purchase money, proceeds and avails thereof, together with any other sums which may then be held as security hereunder or be due under any of the provisions hereof as a part of the Property, shall be applied as follows:

FIRST, to pay all proper costs, charges, fees and expenses, including the fees and costs herein provided for and to pay the costs of appraisals of the Property and the costs of title examination; and to pay or repay to Mortgagee all moneys advanced by them or either of them for taxes, insurance or otherwise, with interest thereon as provided herein; and to

{04519182;v3 }

pay all taxes due upon the Property at the time of sale; and to pay any other lien or encumbrance prior to the legal operation and effect of this Mortgage unless said sale is made subject to any such taxes or other lien or encumbrance; and to pay a counsel fee of One thousand Five hundred Dollars ($1,500.00) for conducting the proceedings if without contest, but if legal services are rendered to Mortgagee in connection with any contested matter in the proceedings, then such additional counsel fees and expenses shall be allowed out of the proceeds of sale or sales as the court may deem proper; and to pay additional reasonable counsel fees, if any, incurred as a result of representing Mortgagee's interest in any proceedings on behalf of any Mortgagor before any United States Bankruptcy Court or similar State insolvency proceedings; and also to pay a commission to the auctioneer or other party making the sale equal to five percent (5%) of the gross sale price;

SECOND, to pay whatever may then remain unpaid under the Note and the interest thereon to the date of payment, whether the same shall be due or not, it being agreed that the Note shall, upon such sale being made before the maturity of the Note, be and become immediately due and payable at the election of Mortgagee and to pay all of the Obligations secured hereby;

THIRD, to pay the remainder of said proceeds, if any, less the expense, if any, of obtaining possession, to Mortgagor or other party lawfully entitled to receive the same, upon the delivery and surrender of possession of the Property sold and conveyed and delivery of all records, books, bank accounts, leases, agreements, security deposits of the tenants and all other material relating to the operation of the Property to the said purchaser or purchasers.

(d) Immediately upon the filing or docketing of suit preliminary to a foreclosure sale of the Property, or any part thereof under this Mortgage, there shall be and become due and owing by Mortgagor, an auctioneer's commission on the total amount of the indebtedness secured hereby equal to two and one-half percent (2 ½%), and Mortgagee shall not be required to receive the principal and interest in satisfaction of the Obligations secured hereby, but said sale may be proceeded with unless, prior to the day appointed therefor, tender is made of said principal, interest, commissions and all expenses and costs incident to such sale and all other sums that are part of the Obligations secured hereby.

(e) Mortgagee may bid and become the purchaser at any sale under this Mortgage. If Mortgagee is the purchaser at any such sale, Mortgagee may apply the outstanding indebtedness against all or any portion of the purchase price, including the deposit.

4.5 **Collection of Revenues.** In connection with the exercise by Mortgagee of the rights and remedies provided for in subsection 4.2(b) hereof:

(a) Mortgagee may notify any tenant, lessee or licensee of the Property, either in the name of the Mortgagee or Mortgagor, to make payment of revenues directly to Mortgagee or Mortgagor's agents, may advise any person of Mortgagee's interest in and to the revenues arising out of or in connection with the Property and may collect directly from such tenants, lessees and licensees all amounts due on account of such revenues;

(b) At Mortgagee's request, Mortgagor will provide written notification to any or all tenants, lessees and licensees of the property concerning Mortgagee's interest in the revenues arising out of or in connection with the Property and will request that such tenants, lessees and licensees forward payment thereof directly to Lender;

(c) Mortgagor shall hold any proceeds and collections of any of the revenues arising out of or in connection with the Property in trust for Mortgagee and shall not commingle such proceeds or collections with any other funds of Mortgagor; and

{04519182;v3 }

11

(d) Mortgagor shall deliver all such proceeds to Mortgagee immediately upon the receipt thereof by Mortgagor in the identical form received, but duly endorsed or assigned on behalf of Mortgagor to Mortgagee.

4.6     **Use and Occupation of Property.** In connection with the exercise of Mortgagee's rights under subsection 4.2(f), Mortgagee may enter upon, occupy, and use all or any part of the Property and may exclude Mortgagor from the Land and the Improvements thereon or portion thereof as may have been so entered upon, occupied, or used. Mortgagee shall not be required to remove any personal Property from the Land and the Improvements upon Mortgagee's taking possession thereof, and may render any personal Property unusable to Mortgagor. In the event Mortgagee manages the Land and the improvements thereon in accordance with subsection 4.2(f) herein, Mortgagor shall pay to Mortgagee on demand a reasonable fee for the management thereof in addition to the Obligations. Further, Mortgagee may construct such improvements on the Land or make such alterations, renovations, repairs, and replacements to the Improvements, as Mortgagee, in its sole discretion, deems proper or appropriate. The obligation of Mortgagor to pay such amounts and all expenses incurred by Mortgagee in the exercise of its rights hereunder shall be included in the Obligations and shall accrue interest at the default rate of interest stated in the Note.

4.7     **Partial Sales.** Mortgagor agrees that in case Mortgagee, in the exercise of the power of sale contained herein or in the exercise of any other rights hereunder given, elects to sell in parts or parcels, said sales may be held from time to time and that the power shall not be exhausted until all of the Property not previously sold shall have been sold, notwithstanding that the proceeds of such sales exceed, or may exceed, the Obligations.

4.8     **Assembly of Property.** Upon the occurrence of any Event of Default, Mortgagee may require Mortgagor to assemble the Property and make it available to Mortgagee, at Mortgagor's sole risk and expense, at a place or places to be designated by Mortgagee which are reasonably convenient to both Mortgagee and Mortgagor.

4.9     **Power of Attorney.** Upon the occurrence of any Event of Default, Mortgagor hereby irrevocably constitutes and appoints Mortgagee as Mortgagor's true and lawful attorney in fact to take any action with respect to the Property to preserve, protect, or realize upon Mortgagee's interest therein, each at the sole risk, cost and expense of Mortgagor, but for the sole benefit of Mortgagee. The rights and powers granted Mortgagee by the within appointment include, but are not limited to, the right and power to: (a) prosecute, defend, compromise, settle, or release any action relating to the Property; (b) endorse the name of Mortgagor in favor of Mortgagee upon any and all checks or other items constituting revenues arising out of or in connection with the Property; (c) sign and endorse the name of Mortgagor on, and to receive as secured party, any of the Property; (d) sign and file or record on behalf of Mortgagor any financing or other statement in order to perfect or protect Mortgagee's security interest; (e) enter into any contracts or agreements relative to, and to take all action deemed necessary in connection with, the construction of any improvements on the Land; (f) manage, operate, maintain or repair the Land and the improvements; and (g) exercise the rights of Mortgagor under any contracts, leases or intangible personal property. Mortgagee shall not be obligated to perform any of such acts or to exercise any of such powers, but if Mortgagee elects so to perform or exercise, Mortgagee shall not be accountable for more than it actually receives as a result of such exercise of power, and shall not be responsible to Mortgagor except for Mortgagee's willful misconduct or gross negligence. All powers conferred upon Mortgagee by this Mortgage and Security Agreement, being coupled with an interest, shall be irrevocable until terminated by a written instrument executed by a duly authorized officer of the Mortgagee.

## ARTICLE 5. MISCELLANEOUS

5.1     **Mortgagee.** The Mortgagee shall be protected in acting upon any notice, request, consent, demand, statement, note or other paper or document believed by them to be genuine and to have been signed by the party or parties purporting to sign the same. The Mortgagee shall not be liable for any error of judgment, nor for any act done or step taken or omitted, nor for any mistake of law or fact, nor for anything which they may do or refrain from doing in good faith nor generally shall a Mortgagee have any accountability hereunder except for his own individual willful default.

5.2     **Estoppel Certificates.** Mortgagor, upon request, made either personally or by mail, shall, within six (6) days in case the request is made personally, or within ten (10) days after the mailing of such request in case

{04519182;v3 }

12

the request is made by mail, certify, by a writing duly acknowledged, to Mortgagee or to any proposed assignee of the Note, the amount of principal and interest then owing on the Note and whether any offsets or defenses exist against the Obligations secured hereby. At the request of Mortgagee, such certificate shall also contain a statement that Mortgagor knows of no Event of Default nor of any other default which, after notice or lapse of time or both, would constitute an Event of Default, which has occurred and remains uncured as of the date of such certificate, or, if any such Event of Default or other default has occurred and remains uncured as of the date of such certificate, then such certificate shall contain a statement specifying the nature thereof, the time for which the same has continued and the action which Mortgagor has taken or proposes to take with respect thereto.

     5.3    **Subrogation.** This Mortgage and the Mortgagee, as additional security, are hereby subrogated to the lien or liens and to the rights of the owners and holders thereof of each and every mortgage, lien or other encumbrance on the Property, or any part thereof, or any claim or demand which is paid or satisfied, in whole or in part, out of the proceeds of the Obligations secured hereby and the respective liens of said mortgages, liens and other encumbrances and claims and demands shall pass to and be held by the Mortgagee as additional security for the Obligations to Mortgagee to the same extent that they would have been preserved and would have been passed to and been held by Mortgagee had they each been duly and regularly assigned, transferred, set over and delivered to Mortgagee by separate deed of assignment, notwithstanding the fact the same may be or may have been satisfied and cancelled of record, it being the intention of the parties hereto that the same will be satisfied and cancelled of record at or about the time they are paid or satisfied out of the proceeds of the Loan.

     5.4    **Notices.** Unless specifically provided otherwise in this Mortgage or by law, any notice required or permitted by or in connection with this Mortgage shall be in writing and shall be made by facsimile or by hand delivery, by overnight delivery service, or by certified mail, unrestricted delivery, return receipt requested, postage prepaid, addressed to Mortgagee or Mortgagor at the appropriate address set forth above or to such other address as may be hereafter specified by written notice by Mortgagee or Mortgagor. Notice shall be considered given as of the date of the facsimile or the hand delivery, one (1) calendar day after delivery to the overnight delivery service, or three (3) calendar days after the date of mailing, independent of the date of actual delivery or whether delivery is ever in fact made, as the case may be, provided the giver of notice can establish that notice was given as provided herein.

     5.5    **Legal Construction.** This Mortgage shall be construed according to the laws of Pennsylvania (excluding Pennsylvania conflict of laws) and any court of competent jurisdiction of Pennsylvania shall have jurisdiction in any proceeding instituted to enforce this Mortgage and any objections to venue are hereby waived.

     5.6    **Usury Limitations.** No provision of this Mortgage shall require the payment or permit the collection of interest or other sum in excess of the maximum permitted by applicable law, including a judicial determination. If any excess of interest or other sum in such respect is herein provided for, or shall be adjudicated to be so provided for herein, neither Mortgagor nor its successors or assigns shall be obligated to pay such interest or other sum in excess of the amount permitted by applicable law, including a judicial determination, and the right to demand the payment of any such excess shall be and hereby is waived. The provisions of this Section shall control all other provisions of this Mortgage.

     5.7    **Recording.** Mortgagor covenants and agrees to promptly cause all documents required by Mortgagee to be properly recorded or filed, including this Mortgage, and to pay all fees, taxes and expenses incident thereto. Mortgagor shall hold harmless and indemnify Mortgagee against any liability incurred by reason of the imposition of any fee, tax or charge on the making and recording of this Mortgage.

     5.8    **Rights of Mortgagee.**

     (a)  *Rights Not Limited.* The rights, powers, privileges and discretions (hereinafter collectively called the "rights") specifically granted to the Mortgagee and those specifically granted to Mortgagee under this Mortgage are not in limitation of but in addition to those to which they are entitled under any general or local law relating to and mortgages in Pennsylvania, now or hereafter existing.

     (b)  *Benefit to Successors and Assigns.* The rights to which Mortgagee may be entitled shall inure to the benefit of its successors and assigns.

{04519182;v3 }

(c) *Rights Cumulative.* All the rights of Mortgagee are cumulative and not alternative and may be enforced successively or concurrently.

5.9 **No Waiver.** Failure of Mortgagee to exercise any of their rights shall not impair any of their rights nor be deemed a waiver thereof, and no waiver of any of their rights shall be deemed to apply to any other such rights, nor shall it be effective unless in writing and signed by the party waiving the right. The acceptance by Mortgagee of any partial payment after default or an Event of Default, with or without knowledge of the default or Event of Default, shall not be a waiver of the default or Event of Default unless Mortgagee shall specifically state in writing that the acceptance waives the default or Event of Default or states further conditions which must be satisfied to constitute such a waiver. The failure of Mortgagee to exercise the option for acceleration of maturity, foreclosure, or either, following an Event of Default or to exercise any other option or privilege granted to Mortgagee hereunder in any one or more instances, shall not constitute a waiver of any such default, but such option or privilege shall remain continuously in force.

5.10 **Mutual Waiver of Jury Trial.** Mortgagor and Mortgagee (by acceptance of this Mortgage) each, on behalf of itself and its successors and assigns, WAIVES with the fullest extent permitted by law all right to TRIAL BY JURY of any and all claims between them arising under this Mortgage, the Note, the Loan Agreement, or any other Loan Documents, and any and all claims arising under common law or under any statute of any state or the United States of America, whether any such claims be now existing or hereafter arising, now known or unknown. In making this waiver Mortgagee and Mortgagor acknowledge and agree that any and all claims made by Mortgagee and all claims made against Mortgagee shall be heard by a judge of a court of proper jurisdiction, and shall not be heard by a jury. Mortgagee and Mortgagor acknowledge and agree that THIS WAIVER OF TRIAL BY JURY IS A MATERIAL ELEMENT OF THE CONSIDERATION FOR THIS TRANSACTION. Mortgagee and Mortgagor, with advice of counsel, each acknowledges that it is knowingly and voluntarily waiving a legal right by agreeing to this waiver provision.

5.11 **Waiver by Mortgagor.** Mortgagor waives, on behalf of itself and all persons now or hereafter interested in the Property, all rights under all appraisement, homestead, moratorium, valuation, redemption, exemption, stay, extension and marshalling statutes, laws or equities now or hereafter existing and agrees that no defense based on any thereof will be asserted in any action enforcing this Mortgage. Furthermore, Mortgagor hereby expressly waives the right or equity of redemption, whether arising under statute, common law, or both. Mortgagor represents and covenants that the Property forms no part of any property owned, used or claimed by Mortgagor as a business or residential homestead or as exempt from forced sale and disclaims and renounces all and every such claim thereto.

5.12 **Secondary Market Cooperation.** Mortgagor acknowledges that Mortgagee may (a) sell this Mortgage, the Note and the other Loan Documents to one or more investors as a whole loan, (b) participate the Loan to one or more investors, (c) deposit this Mortgage, the Note, the Guarantee and the other Loan Documents with a trust, which trust may sell certificates to investors evidencing an ownership interest in the trust assets or (d) otherwise sell the Loan or interest therein to investors (the transactions referred to in clauses (a) through (d) are hereinafter referred to as "**Secondary Market Transactions**"). Mortgagor shall cooperate in good faith with Mortgagee in effecting any such Secondary Market Transaction and shall cooperate in good faith to implement all requirements imposed by any rating agency involved in any Secondary Market Transaction including, without limitation, all structural or other changes to the Loan, modifications to any documents evidencing or securing the Loan, delivery of opinions of counsel acceptable to the rating agency and addressing such matters as the rating agency may require; provided, however, Mortgagor shall not be required to modify any documents evidencing or securing the Loan which would modify (i) the interest rate payable under the Note, (ii) the stated maturity of the Note, (iii) the amortization of principal of the Note, or (iv) any other material economic term of the Loan. Mortgagor shall provide such information and documents relating to Mortgagor, any guarantor of Mortgagor, the Property and any tenant of the Property as Mortgagee may reasonably request in connection with a Secondary Market Transaction. Mortgagee shall have the right to provide to prospective investors any information in its possession, including, without limitation, financial statements relating to Mortgagor, any guarantor of Mortgagor, the Property and any tenant of the Property. Mortgagor acknowledges that certain information regarding the Loan and the parties thereto and the Property may be included in a private placement memorandum, prospectus or other disclosure documents.

5.13 **Indemnification.** Mortgagee shall not be obligated to perform or discharge any obligation or duty to be performed or discharged by Mortgagor under any lease. Mortgagor shall indemnify the Mortgagee for and save them harmless from any and all liability arising from any lease or assignment of a lease as security under this Mortgage. Mortgagee shall not have any responsibility for the control, care, management or repair of the Property or be liable for any negligence in the management, operation, upkeep, repair or control of the Property resulting in loss or injury or death to any lessee or any other person or entity. The obligations and liabilities of Mortgagor under this paragraph shall survive any termination, satisfaction or assignment of this Mortgage and the exercise by Mortgagee of any of its rights or remedies hereunder including, without limitation, the acquisition of the Property by foreclosure or a conveyance in lieu of foreclosure.

5.14 **Binding Effect.** The terms and conditions agreed to by Mortgagor and the covenants of Mortgagor shall be binding upon the personal representatives, successors and assigns of Mortgagor and of each of them, but this provision does not waive any prohibition of assignment or any requirement of consent to an assignment under the other provisions of this Mortgage; any consent to an assignment shall not be consent to any further assignment, each of which must be specifically obtained in writing.

5.15 **Recitals.** The recitals of this Mortgage are incorporated herein and made a part hereof.

5.16 **Number and Gender.** Wherever used herein the singular shall include the plural and the plural the singular, and the use of any gender shall include all genders.

5.17 **Time of Essence.** Time is of the essence of the obligations of Mortgagor in this Mortgage and each and every term, covenant and condition made herein by or applicable to Mortgagor.

5.18 **Captions.** The captions of the Sections of this Mortgage are for the purpose of convenience only and are not intended to be a part of this Mortgage and shall not be deemed to modify, explain, enlarge, or restrict any of the provisions hereof.

5.19. **Severability.** If any provision of this Mortgage or the application thereof to any person or circumstance shall be invalid, inoperative or unenforceable to any extent, the remainder of this Mortgage and the application of such provisions to other persons or circumstances shall not be affected thereby and shall be valid, operative and enforceable to the greatest extent permitted by law.

5.20. **Execution of Counterparts.** This Mortgage may be executed in any number of counterparts and each of such counterparts shall for all purposes be deemed to be an original and all such counterparts shall together constitute but one and the same Mortgage.

5.21. **Security Agreement.** Mortgagor has executed this instrument as a Debtor under the Uniform Commercial Code of the state in which the Property is located. This Mortgage shall constitute and be a security agreement and financing statement under the laws of such state.

5.22. **Future Advances.** This Mortgage is given to secure not only existing Obligations, but also such future advances, whether such advances are obligatory or are to be made at the option of the Mortgagee, or otherwise, as are made within twenty (20) years from the date hereof, to the same extent as if such future advances are made on the date of the execution of this Mortgage. The total amount of Obligations that may be so secured may decrease or increase from time to time, but the total unpaid balance so secured at one time shall not exceed twice the face amount of the Note, plus interest thereon, and any disbursements made for the payment of taxes, levies or insurance on the Mortgaged Property, with interest on such disbursements at the Default Rate as hereinafter defined.

## ARTICLE 6. ADDITIONAL COVENANTS

6.1 **Leases of the Property.**

6.1.1 **Compliance with Leases.** Mortgagor shall carry out all of its agreements and covenants as landlord contained in any leases (which word when used in this Mortgage shall include, without limitation, all

{04519182;v3 }

15

agreements, licenses, contracts, reservations, accounts, and permits affecting all or any part of the Property) and not permit a lien or other encumbrance superior to such leases other than this Mortgage. No lease shall include any space, or grant to any tenant any right or interest in any area outside of the limits of the Property. Upon demand of Mortgagee, Mortgagor shall furnish Mortgagee an executed copy of each lease immediately upon its execution. All future leases shall be written on the standard form accepted by Mortgagee, with only such changes as Mortgagee shall have approved in writing or on a lease agreement approved by Mortgagee.

6.1.2 **Assignment of Leases.** Mortgagor hereby grants, conveys, assigns, and transfers unto the Mortgagee, for the benefit of Mortgagee, all the right, title, interest and privileges which Mortgagor has or may hereafter have in any and all of said leases now existing or hereafter made affecting all or a part of the Property, as said leases may have been or may from time to time be hereafter modified, extended or renewed with all the rents (which word when used in this Mortgage shall include, without limitation, all income and profits) due and becoming due therefrom and including without limitation the right of Mortgagee to inspect the leased areas and books and records of tenants. Mortgagor shall, upon written request by Mortgagee, execute assignments (in any form customarily used by Mortgagee) of any present or future leases, together with the rents due and becoming due therefrom, which affect in any way all or any part of the Property. No such assignment made or required hereby shall be construed as a consent by Mortgagee to any lease or to impose on Mortgagee any obligation with respect thereto. Mortgagor shall not make any other assignment, hypothecation or pledge of any rents under any lease of part or all of the Property. Mortgagor shall not, without the prior written approval of Mortgagee, cancel any of the leases, nor terminate or accept a surrender thereof, nor reduce the payment of rent thereunder, nor modify any of said leases, nor accept any prepayment of rent other than the usual prepayment as would result from the acceptance by landlord more than fifteen (15) days before the first day of each month for the ensuing month under leases approved by Mortgagee according to the terms of such leases. The covenants and restrictions of this subsection shall be deemed covenants and restrictions running with the land.

6.1.3 **Limitation on Subordinate Lienors.** Mortgagor covenants that Mortgagee of any subordinate lien shall have no right, and shall acquire no right, to terminate or modify any lease affecting the Property whether or not such lease is subordinate to the legal operation and effect of this Mortgage.

6.1.4 **Deposit of Rents.** All payments, including security deposits, under any lease received by Mortgagor shall be deemed held by Mortgagor in trust for the payment of the Obligations secured hereby. Mortgagor shall deposit in a non-interest bearing account or accounts with Mortgagee all payments (except security deposits made under residential leases, if any) made under all leases, which sums, subject to the rights of the tenants therein, may be used by Mortgagor in the ordinary course of Mortgagor's business to the extent permitted by law, until one or more of the Events of Default shall occur, but not thereafter.

6.1.5 **Assignment of Bankruptcy Awards.** Mortgagor hereby assigns to the Mortgagee any award made hereafter to it in any court procedure involving any of the tenants in any bankruptcy, insolvency or reorganization proceeding in any state or federal court and any and all payments by any tenant in lieu of rent.

6.1.6 **Limitation of Liability under Leases.** The Mortgagee shall not be obligated to perform or discharge any obligation or duty to be performed or discharged by Mortgagor under any lease; and Mortgagor hereby agrees to indemnify the Mortgagee for and to save them harmless from, any and all liability arising from any lease, or this assignment thereof and this assignment shall not place the responsibility for the control, care, management or repair of the Property upon the Mortgagee, nor make said Mortgagee liable for any negligence in the management, operation, upkeep, repair or control of the Property resulting in loss or injury or death to any tenant, agent, guest, or stranger.

6.1.7 **Security Deposits.** Mortgagor shall deposit in an account or accounts with Mortgagee or its designee, under the depository's standard program for such accounts, all security deposits made under residential leases which sums, subject to the rights of the tenants therein, may be used by Mortgagor in the ordinary course of Mortgagor's business to the extent permitted by law, until one or more of the Events of Default shall occur, but not thereafter. All such deposits shall be the continuing responsibility of Mortgagor, and Mortgagor shall comply with all applicable requirements of state and local law where the Property is located.

6.2 **Environmental Covenants.**

16

6.2.1 **No Substances Present.** Mortgagor hereby represents and warrants to Mortgagee that, after a due and diligent investigation, to the best of its knowledge, there are not now and have never been any materials or substances located on or near the Property that, under federal, state, or local law, statute, ordinance, or regulation, or administrative or court order or decree, or private agreement (collectively, the "**Environmental Laws**"), are regulated as to use, generation, collection, storage, treatment, or disposal (such materials or substances are hereinafter collectively referred to as "**Substances**"). The term "Substances" includes any materials or substances whose release or threatened release may pose a risk to human health or the environment or impairment of property values and shall also include without limitation (i) asbestos in any form, (ii) urea formaldehyde foam insulation, (iii) paint containing lead, (iv) transformers or other equipment which contains dielectric fluid containing levels of polychlorinated biphenyls of 50 parts per million or more, and (v) petroleum in any form. Mortgagor further represents and warrants to Mortgagee that the Property is not now being used nor has it ever been used in the past for any activities involving the use, generation, collection, storage, treatment, or disposal of any Substances. Mortgagor will not place or permit to be placed any Substances on or near the Property except for those Substances that are typically used in the operation of Mortgagor's business provided the same are in appropriately small quantities and are stored, used, and disposed of properly; or Substances that are approved in writing by Mortgagee.

6.2.2 **Acting Upon Presence of Substances.** Mortgagor hereby covenants and agrees that, if at any time (i) Substances are spilled, emitted, disposed, or leaked in any amount; or (ii) it is determined that there are Substances located on, in, or under the Property other than those of which Mortgagee has approved in writing or which are permitted to be used on the Property without Mortgagee's written approval pursuant to subsection 6.2.1 of this Section, Mortgagor shall immediately notify Mortgagee and any authorities required by law to be notified, and shall, within thirty (30) days thereafter or sooner if required by Mortgagee or any governmental authority, take or cause to be taken, at Mortgagor's sole expense, such action as may be required by Mortgagee or any governmental authority. If Mortgagor shall fail to take such action, Mortgagee may make advances or payments towards performance or satisfaction of the same but shall be under no obligation so to do; and all sums so advanced or paid, including all sums advanced or paid in connection with any investigation or judicial or administrative proceeding relating thereto, including, without limitation, reasonable attorneys' fees, expert fees, fines, or other penalty payments, shall be at once repayable by Mortgagor and shall bear interest at the Default Rate, from the date advanced or paid by Mortgagee until the date paid by Mortgagor to Mortgagee, and all sums so advanced or paid, with interest as aforesaid, shall become a part of the Obligations secured hereby.

6.2.3 **Environmental Audits.** Mortgagor, promptly upon the written request of Mortgagee from time to time, shall provide Mortgagee, at Mortgagor's expense, from time to time with an environmental site assessment or environmental audit report, or an update of such an assessment or report, all in scope, form, and content satisfactory to Mortgagee.

6.2.4 **Environmental Notices.** Mortgagor shall furnish to Mortgagee duplicate copies of all correspondence, notices, or reports it receives from any federal, state, or local agency or any other person regarding environmental matters or Substances at or near the Property, immediately upon Mortgagor's receipt thereof.

6.2.5 **Condition of Property.** Mortgagor hereby represents and warrants that there are no wells or septic tanks on the Property serving any other property; no wells or septic tanks on other property serving the Property; no burial grounds, archeological sites, or habitats of endangered or threatened species on the Property; and that no part of the Property is subject to tidal waters; has been designated as wetlands by any federal, state, or local law or governmental agency; or is located in a special flood hazard area.

6.2.6 **Environmental Indemnity.**

6.2.6.1 Mortgagor shall at all times indemnify and hold harmless Mortgagee against and from any and all claims, suits, actions, debts, damages, costs, losses, obligations, judgments, charges, and expenses, of any nature whatsoever suffered or incurred by Mortgagee, whether as beneficiary of this Mortgage, as mortgagee in possession, or as successor-in-interest to Mortgagor by foreclosure deed or deed in lieu of foreclosure, under or on account of the Environmental Laws or any similar laws or regulations, including the assertion of any lien thereunder, with respect to:

(a) any discharge of Substances, the threat of a discharge of any Substances, or the presence of any Substances affecting the Property whether or not the same originates or emanates from the Property or any contiguous real estate including any loss of value of the Property as a result of any of the foregoing;

(b) any costs of removal or remedial action incurred by the United States Government or any costs incurred by any other person or damages from injury to, destruction of, or loss of natural resources, including reasonable costs of assessing such injury, destruction or loss incurred pursuant to any Environmental Laws;

(c) liability for personal injury or property damage arising under any statutory or common law tort theory, including, without limitation, damages assessed for the maintenance of a public or private nuisance or for the carrying on of an abnormally dangerous activity at or near the Property; and/or

(d) any other environmental matter affecting the Property within the jurisdiction of the Environmental Protection Agency, any other federal agency, or any state or local environmental agency.

Mortgagor's obligations under this Agreement shall arise upon the discovery of the presence of any Substance, whether or not the Environmental Protection Agency, any other federal agency or any state or local environmental agency has taken or threatened any action in connection with the presence of any Substances.

**6.3** **CONFESSION OF JUDGMENT. THE FOLLOWING SECTION SETS FORTH WARRANTS OF ATTORNEY FOR ANY ATTORNEY TO CONFESS JUDGMENTS AGAINST MORTGAGOR. IN GRANTING THESE WARRANTS OF ATTORNEY TO CONFESS JUDGMENTS AGAINST MORTGAGOR, MORTGAGOR HEREBY KNOWINGLY, INTENTIONALLY, VOLUNTARILY, AND UNCONDITIONALLY WAIVES ANY AND ALL RIGHTS MORTGAGOR MAY HAVE TO PRIOR NOTICE AND AN OPPORTUNITY FOR HEARING UNDER THE RESPECTIVE CONSTITUTIONS AND LAWS OF THE COMMONWEALTH OF PENNSYLVANIA AND THE UNITED STATES OF AMERICA.**

**FOR THE PURPOSE OF OBTAINING POSSESSION OF THE MORTGAGED PROPERTY UPON THE OCCURRENCE OF AN EVENT OF DEFAULT, MORTGAGOR HEREBY AUTHORIZES AND EMPOWERS ANY ATTORNEY OF ANY COURT OF RECORD OF THE COMMONWEALTH OF PENNSYLVANIA OR ELSEWHERE, AS ATTORNEY FOR MORTGAGOR AND ALL PERSONS CLAIMING UNDER OR THROUGH MORTGAGOR, TO BY COMPLAINT OR OTHERWISE, TO APPEAR FOR AND ENTER AND CONFESS JUDGMENT IN FAVOR OF LENDER AND AGAINST MORTGAGOR, AND AGAINST ALL PERSONS CLAIMING UNDER OR THROUGH MORTGAGOR, FOR RECOVERY BY LENDER OF POSSESSION OF THE MORTGAGED PROPERTY, FOR WHICH THIS MORTGAGE, OR A COPY HEREOF VERIFIED BY AFFIDAVIT, SHALL BE A SUFFICIENT WARRANT; WHEREUPON, IF LENDER SO DESIRES, A WRIT OF POSSESSION MAY IMMEDIATELY ISSUE FOR POSSESSION OF THE MORTGAGED PROPERTY, WITHOUT ANY WRIT OR PROCEEDING WHATSOEVER AND WITHOUT ANY STAY OF EXECUTION. IF FOR ANY REASON AFTER SUCH ACTION HAS BEEN COMMENCED IT SHALL BE DISCONTINUED, OR POSSESSION OF THE MORTGAGED PROPERTY SHALL REMAIN IN OR BE RESTORED TO MORTGAGOR, LENDER SHALL HAVE THE RIGHT IN CONNECTION WITH THE SAME DEFAULT OR ANY SUBSEQUENT DEFAULT TO BRING ONE OR MORE FURTHER ACTIONS OR ENTER AND CONFESS JUDGMENT ONE OR MORE TIMES AS HEREIN PROVIDED TO RECOVER POSSESSION OF THE MORTGAGED PROPERTY. LENDER MAY BRING AN ACTION IN EJECTMENT AND CONFESS JUDGMENT THEREIN BEFORE OR AFTER THE INSTITUTION OF PROCEEDINGS TO FORECLOSE THIS MORTGAGE OR TO ENFORCE THE NOTE, OR AFTER ENTRY OF JUDGMENT IN ANY PROCEEDINGS TO FORECLOSE THIS MORTGAGE OR ON THE NOTE, OR AFTER A SHERIFF'S SALE OF THE MORTGAGED PROPERTY IN WHICH LENDER IS THE SUCCESSFUL BIDDER.**

MORTGAGOR ACKNOWLEDGES THAT MORTGAGOR HAS HAD THE ASSISTANCE OF LEGAL COUNSEL IN THE REVIEW AND EXECUTION OF THIS MORTGAGE AND FURTHER ACKNOWLEDGES THAT THE MEANING AND EFFECT OF THE FOREGOING PROVISIONS CONCERNING CONFESSION OF JUDGMENT HAVE BEEN FULLY EXPLAINED TO MORTGAGOR BY SUCH COUNSEL.

### ARTICLE 7.  U.S. SMALL BUSINESS ADMINISTRATION PROVISION

7.      The Loan secured by this lien was made under a United States Small Business Administration (SBA) nationwide program which uses tax dollars to assist small business owners.  If the United States is seeking to enforce this document, then under SBA regulations:

a)      When SBA is the holder of the Note, this document and all documents evidencing or securing this Loan will be construed in accordance with federal law.

b)      Lender or SBA may use local or state procedures for purposes such as filing papers, recording documents, giving notice, foreclosing liens, and other purposes.  By using these procedures, SBA does not waive any federal immunity from local or state control, penalty, tax or liability.  No Borrower or Guarantor may claim or assert against SBA any local or state law to deny any obligation of Borrower, or defeat any claim of SBA with respect to this Loan.

c)      Any clause in this document requiring arbitration is not enforceable when SBA is the holder of the Note secured by this instrument.

[SIGNATURE AND ACKNOWLEDGEMENT PAGE TO FOLLOW]

IN WITNESS WHEREOF, Mortgagor has caused this Mortgage to be duly executed on its behalf and its seal to be hereunto affixed as of the date first above written.

_____
Brian D. Umholtz, Individually

_____
Jacqueline L. Miller, Individually

I, _Claire Forbush_____, certify that the precise mailing address of the within named Mortgagee is 14 North Main Street, Souderton, PA 18964.

_____
**Agent of Mortgagee**

State of ___Pennsylvania_____
County of ___York_____

On this, the _21st_ day of _December_____, 2023, before me, the undersigned officer, personally appeared **Brian D. Umholtz** and **Jacqueline L. Miller**, known to me (or satisfactorily proven) to be the persons whose names are subscribed to the within instrument, and acknowledged that they executed the same for the purposes therein contained.

In witness whereof, I hereunto set my hand and official seal.

_____
Notary Public

Commonwealth of Pennsylvania - Notary Seal
Diane R. Scott, Notary Public
York County
My commission expires January 26, 2027
Commission number 1196243
Member, Pennsylvania Association of Notaries

{04519182;v3 }

[SIGNATURE PAGE TO MORTGAGE]

## EXHIBIT A

### PROPERTY DESCRIPTION

725 Thomas Armor Drive, Windsor, PA 17366
Parcel Number: 53-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.00-00000

**ALL THAT CERTAIN lot or piece** of ground, being known as Lot No. 82 situate in the Township of Windsor, County of York and Commonwealth of Pennsylvania, bounded and described according to a Revised Final Subdivision Plan of "Chatham Creek Phase 2" prepared by RGS Associates, dated March 12, 2004, last revised November 11, 2004 and recorded in Plan Book SS, Page 817, as follows, to wit:

BEGINNING at a point on the centerline of Thomas Armor Drive (50 feet wide), a corner of Lot No. 83 on said Plan; thence extending from said beginning point and along the centerline of Thomas Armor Drive on the arc of a circle curving to the left having a radius of 650.00 feet the arc distance of 42.12 feet (and a chord bearing of North 28 degrees 46 minutes 51 seconds West, 42.11 feet) to a point, a corner of Lot No. 81 on said Plan; thence leaving Thomas Armor Drive and extending along Lot No. 81 North 59 degrees 21 minutes 46 seconds East, 147.00 feet to a point, a corner of Open Space Lot No. 205 on said Plan; thence extending along same South 28 degrees 46 minutes 51 seconds East, 51.64 feet to a point, a corner of Lot No. 83 aforesaid; thence extending along Lot No. 83 South 63 degrees 04 minutes 32 seconds West, 147.00 feet to a point on the centerline of Thomas Armor Drive, the first mentioned point and place of BEGINNING.

**BEING THE SAME PREMISES** which MJS Properties York, LLC, a Pennsylvania limited liability company by deed dated January 12, 2016 and recorded January 15, 2016 in the Office of the Recorder of Deeds in and for York County, Pennsylvania in Record Book 2353, Page 3627, granted and conveyed unto Jared Tyler Stump, his heirs and assigns.

The said Aubree Stump joins in this transaction to relinquish all marital rights, title and interest to said property.

{04519182;v3 }

[EXHIBIT A TO MORTGAGE]

## EXHIBIT B

### PERMITTED ENCUMBRANCES

Superior Mortgage in the original principal amount of $118,000.00 in favor of MERS, Inc. as nominee for Homesale Mortgage LLC dated February 22, 2019, and recorded February 25, 2019, in Book 2507 and Page 2483.

Superior Mortgage in the original principal amount of $38,500.00 in favor of Truist Bank dated December 14, 2020, and recorded December 28, 2020 in Book 2620 and Page 556.